[No. 58340-9-I. Division One. December 24, 2007.]

*In the Matter of the Parentage, Parenting, and Support of* A.R.K.-K. ET AL.

SUSAN M. KLEIN, *Appellant*, v. SEAN KELLY, *Respondent*.

---

[19] Given our disposition, we do not reach Knight's other issue regarding illegible signatures.

*Susan M. Alexander* (of *Law Offices of Susan Alexander, PS*) and *Janet M. Helson* (of *Skellenger Bender, PS*), for appellant.

*John B.K. Schochet* (of *Dorsey & Whitney, LLP*), for respondent.

¶1 ELLINGTON, J. — This is a dispute about jurisdiction to determine child custody. The parties involved here lived in San Juan County. They separated, and the mother moved to Montana with the children. The father followed. Nearly a year later, the mother returned to Washington. Thereafter, the parties sought competing custody orders in both states. Montana is the children's home state under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), chapter 26.27 RCW. A domestic violence protection order issued in Washington in 2003 awarding temporary custody to the mother expired in 2004 and did not operate to confer

jurisdiction upon Washington in 2005. We hold that Montana courts have jurisdiction to make the custody determinations in this case, including whether to decline jurisdiction because the parties' history of domestic violence makes Washington a more appropriate forum. We thus affirm the trial court.

## BACKGROUND

¶2 Susan Klein and Sean Kelly are the parents of two minor children. Their relationship has been tumultuous. In October 2003, while they were living in San Juan County, Klein obtained a one-year domestic violence protection order (DVPO) from San Juan County Superior Court. Judge Vickie I. Churchill ruled that Washington was the children's home state with exclusive, continuing jurisdiction to make child custody determinations, and that domestic violence had occurred. Consistent with RCW 26.50.060(1)(d), the DVPO granted Klein temporary custody.

¶3 In July 2004, Klein moved with the children to Montana. Soon after, Kelly followed. The couple's relationship worsened, and in June 2005, Klein moved back to Washington with the children.

¶4 Klein immediately obtained a second DVPO from the San Juan County court. Despite the parties' 11-month absence, the court again found that Washington was the children's home state with exclusive, continuing jurisdiction. Again, the DVPO granted Klein temporary custody.

¶5 Meanwhile in Montana, Kelly petitioned for a parenting plan. The Montana court (Judge Ted O. Lympus) granted temporary joint custody, ordered Klein to return the children to Flathead County, enjoined her from removing them from that county, and required Klein to appear for a hearing on the interim parenting plan.

¶6 Klein did not return the children but appeared at the hearing by phone. Judge Lympus ruled that Montana had jurisdiction, again ordered Klein to return the children to

Montana, and set a date for another hearing on the parenting plan. When Klein did not return the children and failed to appear at the hearing, Judge Lympus found her in contempt, adopted Kelly's proposed interim parenting plan, ordered Klein to transfer custody of the children to Kelly, and "request[ed] the assistance of the appropriate law enforcement agencies in the [s]tates of Washington and Montana in facilitating such transfer." Clerk's Papers at 257-58.

¶7 To enforce the Montana order, Kelly sought a writ of habeas corpus in San Juan County. Judge Churchill issued the writ, and Klein surrendered the children. Klein followed the children back to Montana.

¶8 The Montana court held another hearing, at which Klein indicated she and Kelly were attempting to work out a parenting schedule. Klein sought approval to take the children to Washington from December 26 to December 31. The court apparently did not give permission, but Klein brought the children to Washington anyway.

¶9 The Montana court ordered Klein to return the children and to appear at a show cause hearing. Klein did not comply. Kelly obtained a second writ of habeas corpus from the San Juan County court. Klein and the children were by then living in a domestic violence shelter in King County, however, and the writ was not enforced.

¶10 In February 2006, Klein initiated actions in King County, seeking a parenting plan and child support. She asked the court to rule that Washington had exclusive jurisdiction. Kelly appeared and moved to dismiss for lack of jurisdiction.

¶11 Judge Glenna Hall held a hearing on the motions. Judge Lympus participated by phone. Judge Hall ruled that jurisdiction was properly in Montana, not Washington. Klein appeals.[1]

---

[1] The issue is a mixed question of fact and law. Accordingly, we give deference to the trial court's factual findings but review its legal conclusions de novo. *In re Pennington,* 142 Wn.2d 592, 602-03, 14 P.3d 764 (2000).

## DISCUSSION

¶12 When interstate custody issues arise, the UCCJEA establishes a hierarchy for determining which state has jurisdiction. The children's home state, if one exists, has priority, and no other state may assert jurisdiction unless the home state declines. RCW 26.27.201(1). Once a court properly asserts jurisdiction and makes an initial custody determination, it retains "exclusive, continuing jurisdiction over the determination" until the children and parents no longer reside in the state or no longer have a significant connection to the state. RCW 26.27.211(1). Jurisdiction ceases once the child and parents "do not presently reside in this state." RCW 26.27.211(1)(b).

¶13 The question here is whether Washington had jurisdiction when Klein returned with the children in 2005. Klein contends Washington was the children's home state, and that in any event, Washington had exclusive, continuing jurisdiction because of the 2003 DVPO. We disagree as to both assertions.

¶14 The UCCJEA defines "home state" as "the state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding." RCW 26.27.021(7). Temporary absences are included within this six month period. *Id.* Klein and the children moved to Montana in July 2004 and lived there until June 2005. At that point, Kelly had also resided in Montana for at least seven months. Washington lost jurisdiction when the children and both parents moved to Montana, which became the children's home state.

¶15 Klein contends, however, that her residence in Montana was merely a temporary absence from Washington and that Washington thus remained the children's home state. A party's intent is relevant in determining whether an absence is temporary or permanent, and Klein argues that she never intended to make a permanent home in Montana. *See In re Marriage of Payne,* 79 Wn. App. 43,

52, 899 P.2d 1318 (1995) (parent's four month absence from Virginia was not temporary because he left that state "with the intention of moving permanently to Washington"). She points to statements in her declaration to the effect that her sole motivation in moving to and from Montana was to escape Kelly's abuse. Klein raises this argument for the first time on appeal, and unsurprisingly, the trial court made no findings on this issue. But Klein's statements indicate her reluctance and motivation to leave Washington, not her intent to return. Indeed, her briefing suggests she would have stayed in Montana if Kelly had not also moved there. Even if the issue were properly before us, Klein makes no persuasive argument that her absence was temporary.

■ ¶16 Klein next contends that the DVPO entered in 2003 gave Washington exclusive, continuing jurisdiction thereafter. Under RCW 26.27.211(1), a state that properly makes a child custody determination "has exclusive, continuing jurisdiction over the determination." The 2003 order granted only temporary care, custody, and control over the child[2] and expired after one year. Klein is correct that temporary orders are child custody determinations under the UCCJEA and can confer exclusive, continuing jurisdiction under RCW 26.27.211. RCW 26.27.021(3). But a temporary order can confer only temporary jurisdiction, because an expired order has no continuing force or effect. If the order determining custody simply expires, so does any jurisdiction based thereon. Otherwise, courts would be forced to scour the records of every other state for expired orders before resolving the custody disputes of its own residents. This is the sort of uncertainty the UCCJEA was designed to eliminate.

■ ¶17 Klein suggests, however, that once established, jurisdiction continues until a court *finds* that the parties have relocated. This is incorrect. It is the fact of relocation,

---

[2] At the time the 2003 order was entered, Klein was pregnant with the couple's second child. The order therefore refers only to the elder child.

rather than any formal finding, that controls: "[U]nless a modification proceeding has been commenced, when the child, the parents, and all persons acting as parents physically leave the [s]tate to live elsewhere, the exclusive, continuing jurisdiction ceases." UNIF. CHILD CUSTODY JURISDICTION & ENFORCEMENT ACT § 202 cmt., 9 pt. IA U.L.A. 674 (1997).

¶18 In 2005, the San Juan County court first determined that Washington had jurisdiction but later enforced the Montana orders. Klein next contends that even if the jurisdictional finding was in error, Kelly waived any challenge by failing to appeal. Klein relies on RCW 26.27.061, which provides that a custody determination "made by a court of this state *that had jurisdiction under this chapter*" is "conclusive as to all decided issues of law and fact," including jurisdictional issues. (Emphasis added.) But as we have explained, Washington did not have jurisdiction under the UCCJEA in 2005, so the San Juan County court's finding to the contrary is not binding under RCW 26.27.061 and not entitled to res judicata effect.[3] Further, although the order was not appealed, Judge Churchill essentially superseded her earlier finding by granting a writ of habeas corpus to enforce the Montana order only months later.[4] Klein did not appeal from that order.

¶19 Klein also argues that the trial court erred by giving full faith and credit to the Montana orders. She

---

[3] Klein also relies on *In re Marriage of Zadorozny,* 70 Wn. App. 464, 853 P.2d 960 (1993). There, a father appealed a superior court decision refusing to enforce a Canadian divorce decree because, by the time the father filed the decree in Washington, the matter had already been resolved in a separate Washington case filed by the mother in which the father had appeared and from which he failed to appeal. The court held that the jurisdictional determinations in the mother's case were binding. The court cited former RCW 26.27.120 (1979), which like RCW 26.27.061, states that a custody decree rendered by a court " 'which had jurisdiction' " is " 'conclusive as to all issues of law and fact decided.' " *Id.* at 470 (quoting RCW 26.27.120). *Zadorozny* is inapplicable. There, the Washington court that made the custody determination properly had jurisdiction.

[4] Klein contends Judge Churchill granted the writ without considering her defense that Montana lacked jurisdiction. We find that implausible. The habeas statute required Judge Churchill to determine whether Klein had "legal cause" to keep the children and to grant the writ if not. RCW 7.36.120.

contends the Montana court violated the federal Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. §1738A, by asserting jurisdiction while the 2005 DVPO proceeding was already pending in Washington.[5]

¶20 The PKPA requires states to enforce and not modify any custody determination "made consistently with the provisions of this section by a court of another [s]tate." 28 U.S.C. §1738A(a). A child custody determination is consistent with the PKPA only if the court making the determination has jurisdiction under the laws of its own state. 28 U.S.C. § 1738A(c)(1). Because Washington did not have jurisdiction to make a child custody determination in 2005, Montana did not violate the PKPA by exercising jurisdiction.[6] Rather, since Montana was properly exercising jurisdiction under its laws, the PKPA required Washington to give full faith and credit to the Montana order.

■■ ■■ ¶21 Finally, Klein urges us to recognize that these issues arise only because she was forced to move to and from Montana in order to escape domestic violence. She contends that recognizing Montana jurisdiction would violate the purpose of the UCCJEA by rewarding Kelly's behavior with jurisdiction in the state of his choice. This argument is misdirected.

¶22 The UCCJEA does indeed address the problems faced by parents who flee domestic violence across state lines and permits a state to *decline* jurisdiction if the court determines it is an inconvenient forum and a court of another state is more appropriate. RCW 26.27.261(1). One of the factors considered in this determination is "[w]hether domestic violence has occurred and is likely to continue in

---

[5] Klein also contends Montana asserted jurisdiction based upon Kelly's statement that he knew of no other pending custody action, when in fact he was aware of the pending DVPO petition in San Juan County. If the statement was disingenuous, such obfuscation is troubling, but the issue is irrelevant to our analysis.

[6] To be consistent with its terms, the PKPA also requires another of several enumerated conditions to be met. 28 U.S.C. § 1738A(c)(2). We need not consider whether any of these conditions is met in this case because we conclude that the court did not have jurisdiction under Washington law.

the future and which state could best protect the parties and the child." RCW 26.27.261(2)(a); *see also In re Marriage of Stoneman,* 2003 MT 25, 314 Mont. 139, 148, 64 P.3d 997.

¶23 Klein contends the trial court erred by failing to consider whether domestic violence occurred before Washington "declined jurisdiction." Appellant's Reply Br. at 27. But Washington did not decline jurisdiction. Rather, as Judge Hall correctly concluded, Washington did not have jurisdiction to decline. The UCCJEA does not permit Washington unilaterally to declare itself a more convenient forum and wrest jurisdiction from the home state. Klein must make her argument to the Montana court.[7]

¶24 Affirmed.

APPELWICK, C.J., and COLEMAN, J., concur.

---

[7] The comment to the UCCJEA's inconvenient forum provision explains that "the court should determine whether the parties are located in different [s]tates because one party is a victim of domestic violence or child abuse. If domestic violence or child abuse has occurred, this factor authorizes the court to consider which [s]tate can best protect the victim from further violence or abuse." UNIF. CHILD CUSTODY JURISDICTION & ENFORCEMENT ACT § 207, cmt., 9 pt. IA U.L.A. 683 (1997). It appears that Klein made this argument to the Montana court in a December 7, 2005 motion to dismiss. Although subsequent orders in the case indicate the motion was denied, the order is not in our record and we have no information about the court's analysis.