FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 JUL 15 AM 9: 14



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | |
| | ) | |
| WENDY A. MCDERMOTT | ) | DIVISION ONE |
| | ) | |
| Appellant, | ) | No. 69107-4-I |
| | ) | |
| and | ) | |
| | ) | |
| JUSTIN J. MCDERMOTT, | ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: July 15, 2013 |
| | ) | |

DWYER, J. — The Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), chapter 26.27 RCW, stipulates that Washington courts may properly exercise jurisdiction to enter a child custody determination when Washington is the child's "home state." When Washington is not the child's "home state," our courts may nevertheless exercise jurisdiction where the courts of the child's "home state," if one exists, decline to exercise jurisdiction and certain other conditions are met. A child's "home state" is "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." RCW 26.27.021(7). Where a child is temporarily absent from his or her home state,

the time of absence is part of the period measured in order to determine the child's home state. The parents' intent is relevant in determining whether a period of absence was intended to be temporary or permanent.

Here, Wendy McDermott appeals from a superior court judge's revision of a commissioner's order, in which the superior court judge determined that Kansas is Wendy's child's "home state."[1] In so determining, the judge concluded that the child's time in Costa Rica, where he was born and remained for the first six weeks of his life, was a "temporary absence" from Kansas, the state in which the child's parents each lived both before and after the birth. Based upon its unchallenged factual findings, which were based on evidence that both parents intended to return with their newborn child to Kansas soon after the birth, the judge's determination was correct. Because the courts of Kansas have not declined to exercise jurisdiction, the courts of Washington should not make custody determinations involving the child. We affirm the superior court judge's order to this effect.

I

Wendy and Justin McDermott were married in Miami, Oklahoma, on March 17, 2011. Their only child, H.M., was born on June 15, 2011. H.M. was born in Costa Rica, where Wendy had previously worked, because his parents wanted him to enjoy dual citizenship. At the time of H.M.'s birth, both Wendy and Justin were residents of Kansas and intended to return to Kansas with H.M. The

---

[1] In order to avoid confusion, the parties are referred to by their first names throughout this opinion.

- 2 -

family returned to Kansas approximately six weeks after H.M.'s birth, on or about July 28, 2011. H.M. remained in Kansas with his parents until January 15, 2012, when Wendy and H.M. moved to Washington. Thus, prior to the move to Washington, H.M. was physically present in Kansas for five-and-one-half months.

On March 29, 2012, two-and-one-half months after Wendy and H.M. moved to Washington, Wendy filed a petition for dissolution of marriage in the Snohomish County Superior Court. H.M. was nine months old at the time. Wendy requested that the court grant a domestic violence protection order, the petition for which was to be separately filed. She asserted that the superior court should exercise jurisdiction over H.M. both because H.M. had no other home state and Wendy had significant connections with Washington and, alternatively, because it was necessary to protect H.M. or Wendy from abuse and, thus, an exercise of temporary emergency jurisdiction was warranted. Justin was served with the dissolution petition on April 17, 2012.

On the same day that Wendy filed a petition for dissolution in the superior court, March 29, 2012, Justin filed for divorce in Kansas. The Kansas court thereafter entered a temporary support order and a temporary custody order on April 2, 2012, before Justin was served with Wendy's dissolution petition. Wendy was not served with the Kansas pleadings and orders until June 28, 2012.

In Washington, on May 4, 2012, Wendy filed a petition for entry of a domestic violence protection order and a proposed temporary parenting plan. Justin denied that the alleged incidents of domestic violence had occurred and asserted that there was no basis for entry of a protection order. On May 22,

2012, he filed a proposed temporary parenting plan with the superior court.

On May 30, 2012, a superior court commissioner entered an order denying Wendy's petition for a domestic violence protection order and postponing a decision on issues regarding a parenting plan for H.M. The commissioner reserved ruling on issues regarding jurisdiction pursuant to the UCCJEA but ordered that Washington would "maintain jurisdiction in the meantime."

On June 5, 2012, Justin filed a motion to dismiss the dissolution action for lack of jurisdiction. He asserted that, pursuant to the UCCJEA, the court did not have jurisdiction over H.M. both because Washington was not H.M.'s "home state" and because Wendy and H.M. did not have a "significant connection" to Washington and there was not "substantial evidence" concerning H.M.'s care and relationships available in Washington. He also asserted that, even if Washington had jurisdiction pursuant to the UCCJEA, it should decline to exercise jurisdiction because Kansas was a more convenient forum. Wendy responded that, pursuant to RCW 26.27.201(1)(b),[2] the Washington superior court had

_____

[2] RCW 26.27.201 provides in relevant part:
(1) Except as otherwise provided in RCW 26.27.231, a court of this state has jurisdiction to make an initial child custody determination only if:
    (a) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
    (b) A court of another state does not have jurisdiction under (a) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under RCW 26.27.261 or 26.27.271, and:
    (i) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

- 4 -

jurisdiction based on a "significant connection" with the state and the existence of "substantial evidence" within the state. She additionally asserted that, pursuant to the factors set forth in the UCCJEA, Kansas was not a more convenient forum.

The next day, Wendy filed a motion for revision of the commissioner's May 30 order, asserting that the commissioner had erred by denying her request for a domestic violence order of protection. On June 14, 2012, a superior court judge granted Wendy's motion for revision and entered an order of protection. The order of protection excluded Justin from Wendy's residence and H.M.'s day care center and prohibited him from coming within 500 feet of either location. However, it did not restrain Justin from contacting or visiting H.M.; in fact, the order stated that visitation would be determined pursuant to temporary orders entered by the court. The court stated that it was exercising both temporary emergency jurisdiction and jurisdiction due to H.M.'s lack of a home state and his presence in Washington.

On June 21, 2012, the superior court commissioner entered an order regarding jurisdiction in response to Justin's motion to dismiss. The commissioner ruled that H.M. had no home state because he had not lived in any state for six consecutive months and that the Washington court could not properly exercise temporary emergency jurisdiction. Referencing RCW 26.27.201(1)(b), the order stated that the commissioner relied upon "significant contacts" and "substantial evidence" in determining jurisdiction. The

---

(ii) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

- 5 -

commissioner determined that, due to the greater amount of time that H.M. had lived in Kansas, Washington "should decline jurisdiction to Kansas" because "there are likely to be more witnesses to the child's upbringing" in Kansas than in Washington. The commissioner ordered that H.M. should remain in Wendy's custody until a Kansas court order was entered.

The next day, Wendy moved for revision of the commissioner's June 21 order. On July 6, 2012, Justin filed in the superior court, for the first time, copies of the Kansas pleadings, including his petition for divorce and the Kansas court's temporary support order and temporary custody order entered on April 2, 2012.

On July 9, 2012, a superior court judge entered an order on Wendy's motion to revise the commissioner's June 21 order.[3] The court determined that, pursuant to the UCCJEA, Kansas was H.M.'s home state "in that he resided in Kansas for at least six consecutive months in that his absence from Kansas from his date of birth on June 15, 2011 was a temporary absence as to both [H.M.] and his parents." Thus, the court concluded that "Washington does not have jurisdiction unless Kansas declines to exercise its jurisdiction on the ground that Washington is the more appropriate forum." The judge ordered:

> 1. The Commissioner's order is revised in so far as it found that there was no home state. The court finds that Kansas was the child's home state on the date of commencement of this proceeding.
> 2. The court denies the motion to revise in so far as it declined to exercise jurisdiction in favor of Kansas.
> 3. The court denies the motion to revise with regard to all other provisions ordered by the commissioner.

---

[3] Different superior court judges entered the June 14, 2012 and July 9, 2012 orders.

Wendy appeals from the superior court's July 9 order.

II

As an initial matter, we note that both parties discuss the UCCJEA's use of the term "jurisdiction" as though it were a matter of subject matter jurisdiction. As the parties frame it, either the Washington courts have subject matter jurisdiction over the dispute or the Kansas courts have subject matter jurisdiction over the dispute. To the contrary, this dispute involves a statute (the UCCJEA) that restricts, in some instances, a court's *exercise* of its subject matter jurisdiction. The UCCJEA, as adopted by the Washington legislature, does not— and cannot—divest a superior court of subject matter jurisdiction.

We review de novo questions of a court's subject matter jurisdiction. Cole v. Harveyland, LLC, 163 Wn. App. 199, 205, 258 P.3d 70 (2011). A party may raise a question of subject matter jurisdiction for the first time at any point in a proceeding, even on appeal. Cole, 163 Wn. App. at 205-06. Because the absence of subject matter jurisdiction is a defense that can never be waived, judgments entered by courts acting without subject matter jurisdiction must be vacated even if neither party initially objected to the court's exercise of subject matter jurisdiction and even if the controversy was settled years prior. Cole, 163 Wn. App. at 205; Shoop v. Kittitas County, 108 Wn. App. 388, 397-98, 30 P.3d 529 (2001), aff'd on other grounds, 149 Wn.2d 29, 65 P.3d 1194 (2003).

The consequences of a court acting without subject matter jurisdiction are "draconian and absolute." Cole, 163 Wn. App. at 205. "'If the phrase [subject matter jurisdiction] is to maintain its rightfully sweeping definition, it must not be

reduced to signifying that a court has acted without error.'" Marley v. Dep't of Labor & Indus., 125 Wn.2d 533, 539, 886 P.2d 189 (1994) (quoting In re Marriage of Major, 71 Wn. App. 531, 534-35, 859 P.2d 1262 (1993)). Thus, appellate courts should "use caution when asked to characterize an issue as 'jurisdictional' or a judgment as 'void.'" Cole, 163 Wn. App. at 205. Judicial opinions sometimes "misleadingly" indicate that the court is dismissing an action for lack of subject matter jurisdiction when, in fact, the basis for the ruling is that "some threshold fact has not been established." Cole, 163 Wn. App. at 205.

Indeed, "[a]s the United States Supreme Court has observed, 'jurisdiction' is a word of too many meanings." Cole, 163 Wn. App. at 208 (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 90, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)). That Court has noted that it and other courts have "sometimes been profligate" in using the term "jurisdiction." Arbaugh v. Y & H Corp., 546 U.S. 500, 510, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006). Where the question of jurisdiction was not "central to the case" and thus did "not require close analysis," courts have "sometimes mischaracterized claim-processing rules or elements of a cause of action as jurisdictional limitations." Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 161, 130 S. Ct. 1237, 176 L. Ed. 2d 18 (2010). These mischaracterizations can lead to "'drive-by jurisdictional rulings,' which too easily can miss the 'critical difference[s]' between true jurisdictional conditions and nonjurisdictional limitations on causes of action." Reed Elsevier, 559 U.S. at 161 (alteration in original) (citation omitted) (quoting Steel Co., 523 U.S. at 91; Kontrick v. Ryan, 540 U.S. 443, 456, 124 S. Ct. 906, 157 L. Ed. 2d 867 (2004)).

Similarly, our own Supreme Court has noted that "'[t]he term "subject matter jurisdiction" is often confused with a court's "authority" to rule in a particular manner,'" leading to "'improvident and inconsistent use of the term.'" Marley, 125 Wn.2d at 539 (quoting Major, 71 Wn. App. at 534-35). Indeed, a "court or agency does not lack subject matter jurisdiction solely because it may lack authority to enter a given order." Marley, 125 Wn.2d at 539.

A court has subject matter jurisdiction where it has authority "to adjudicate the type of controversy involved in the action." Shoop, 108 Wn. App. at 393. See also Cole, 163 Wn. App. at 209 ("The critical concept in determining whether a court has subject matter jurisdiction is the type of controversy."). Superior courts are granted broad original subject matter jurisdiction by Wash. Const. art. IV, § 6.[4] Cole, 163 Wn. App. at 206. Exceptions to this broad jurisdictional grant

---

[4] Wash. Const. art. IV, §6 provides in full:
Superior courts and district courts have concurrent jurisdiction in cases in equity. The superior court shall have original jurisdiction in all cases at law which involve the title or possession of real property, or the legality of any tax, impost, assessment, toll, or municipal fine, and in all other cases in which the demand or the value of the property in controversy amounts to three thousand dollars or as otherwise determined by law, or a lesser sum in excess of the jurisdiction granted to justices of the peace and other inferior courts, and in all criminal cases amounting to felony, and in all cases of misdemeanor not otherwise provided for by law; of actions of forcible entry and detainer; of proceedings in insolvency; of actions to prevent or abate a nuisance; of all matters of probate, of divorce, and for annulment of marriage; and for such special cases and proceedings as are not otherwise provided for. The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court; and said court shall have the power of naturalization and to issue papers therefor. They shall have such appellate jurisdiction in cases arising in justices' and other inferior courts in their respective counties as may be prescribed by law. They shall always be open, except on nonjudicial days, and their process shall extend to all parts of the state. Said courts and their judges shall have power to issue writs of mandamus, quo warranto, review, certiorari, prohibition, and writs of habeas corpus, on petition by or on behalf of any person in actual custody in their respective counties.

"are to be narrowly construed." Cole, 163 Wn. App. at 206. Superior courts have jurisdiction in "'all cases . . . in which jurisdiction shall not have been by law vested exclusively in some other court,'" by an explicit act of Congress or the legislature.[5] Hous. Auth. of City of Seattle v. Bin, 163 Wn. App. 367, 375, 260 P.3d 900 (2011) (quoting WASH. CONST. art. IV, § 6).

Superior courts possess "subject matter jurisdiction that cannot be whittled away by statutes." Shoop, 108 Wn. App. at 396. By protecting the superior courts' subject matter jurisdiction from statutory erosion, our state "constitution provides the foundation for an independent and coequal judicial branch of state government." Shoop, 108 Wn. App. at 396. "If the type of controversy is within the subject matter jurisdiction, then all other defects or errors go to something other than subject matter jurisdiction." Cole, 163 Wn. App. at 209.

Our Supreme Court has noted that, notwithstanding the manner in which the UCCJEA uses the term "jurisdiction," "Washington courts d[o], in fact, have subject matter jurisdiction over the parties and the issues" in a case implicating the UCCJEA.[6] In re Custody of A.C., 165 Wn.2d 568, 573 n.3, 200 P.3d 689 (2009). The court further noted that the UCCJEA "might have more accurately

---

Injunctions and writs of prohibition and of habeas corpus may be issued and served on legal holidays and nonjudicial days.

[5] It goes without saying that the Washington legislature cannot confer subject matter jurisdiction upon the trial courts of Kansas.

[6] The UCCJEA uses the term "jurisdiction" throughout its provisions. See, e.g., RCW 26.27.201; RCW 26.27.211; RCW.26.27.221; RCW 26.27.231. It does not, however, use the term "subject matter jurisdiction" in its text, although the comments to the UCCJEA do use the term once. See UCCJEA § 201 cmt. 2, 9 U.L.A. Part IA 672 (1997).

used the term 'exclusive venue.'" A.C., 165 Wn.2d at 573 n.3.[7] Nevertheless, for consistency, the court decided to use the statutory language throughout its opinion. A.C., 165 Wn.2d at 573 n.3. As will we.[8]

## III

Wendy first contends that, pursuant to the UCCJEA, H.M. has no "home state." Therefore, she asserts, the superior court judge erred by determining, first, that Kansas was H.M.'s home state and, second, that Washington courts do not have jurisdiction to make an initial child custody determination involving H.M. unless the courts of Kansas decline to exercise their jurisdiction. Specifically, Wendy contends that the six-week period that H.M. spent in Costa Rica at the beginning of his life did not constitute a "temporary absence" from Kansas pursuant to the UCCJEA and, accordingly, was erroneously counted in computing the amount of time that he lived in Kansas prior to moving to Washington. We disagree.

Whether a superior court has the authority pursuant to the UCCJEA to exercise its jurisdiction is a mixed question of law and fact. In re Parentage,

---

[7] In an analogous case involving a challenge to a superior court's ability, pursuant to the Uniform Interstate Family Support Act (UIFSA), chapter 26.21A RCW, to modify a child support order entered by a court of another state, our Supreme Court similarly noted that "[t]he legislature has limited the superior courts' authority—not the superior courts' jurisdiction—to modify another state's child support order by adopting the UIFSA." In re Marriage of Schneider, 173 Wn.2d 353, 360, 268 P.3d 215 (2011).

[8] We are aware that Division Three of this court, subsequent to the opinion in A.C., has held that the UCCJEA's procedural requirements are jurisdictional in nature and, thus, that orders entered in violation of those requirements are void. In re Parentage of Ruff, 168 Wn. App. 109, 115-18, 275 P.3d 1175 (2012). Because of the significance of the question of subject matter jurisdiction and its fundamental, constitutional definition, we neither adopt nor agree with this analysis. The UCCJEA's imprecise use of the term "jurisdiction" neither erodes nor curtails the constitutionally-endowed subject matter jurisdiction of Washington's superior courts.

Parenting, and Support of A.R.K.-K., 142 Wn. App. 297, 302 n.1, 174 P.3d 160 (2007). We defer to the superior court's unchallenged factual findings but review de novo its legal conclusions. A.R.K.-K., 142 Wn. App. at 302 n.1. Moreover, we review de novo issues of statutory interpretation. J.E. Dunn Nw., Inc., v. Dep't of Labor & Indus., 139 Wn. App. 35, 43, 156 P.3d 250 (2007).

The UCCJEA was promulgated in order to reduce the occurrence of "competing jurisdictions entering conflicting interstate child custody orders, forum shopping, and the drawn out and complex child custody legal proceedings often encountered by parties where multiple states are involved." A.C., 165 Wn.2d at 574. Most states, including Washington, have now adopted the UCCJEA. A.C., 165 Wn.2d at 574. The UCCJEA "establishes a hierarchy for determining which state has jurisdiction." A.R.K.-K., 142 Wn. App. at 303.

RCW 26.27.201(1) sets forth the "exclusive jurisdictional basis for making a child custody determination by a court of this state." RCW 26.27.201(2). Unless a Washington court exercises temporary emergency jurisdiction pursuant to RCW 26.27.231, that court may properly exercise its jurisdiction and make an initial child custody determination only if certain statutory requirements are met. RCW 26.27.201(1)(a)-(d). As relevant here, a Washington court may properly exercise jurisdiction pursuant to RCW 26.27.201(1) only if:

> (a) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
> (b) A court of another state does not have jurisdiction under (a) of this subsection, or a court of the home state of the child has

> declined to exercise jurisdiction on the ground that this state is the more appropriate forum under RCW 26.27.261 or 26.27.271, and:
>
> (i) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
>
> (ii) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

RCW 26.27.201(1).[9]

Where a child has a home state pursuant to the UCCJEA, that state's courts have priority with respect to questions of the child's care and custody. A.R.K.-K., 142 Wn. App. at 303. Unless the courts of the home state decline to exercise their jurisdiction, no other state's courts may properly exercise jurisdiction. RCW 26.27.201(1)(b). Pursuant to the UCCJEA, a "home state" is defined as

> the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with a parent or person acting as a parent.

---

[9] At oral argument and in her briefing, Wendy labors under the misapprehension that, pursuant to the UCCJEA, a proceeding commences when service upon the opposing party is effected rather than when a pleading is first filed. This understanding runs contrary to the plain language of the UCCJEA, which provides that, "'[c]ommencement' means the filing of the first pleading in a proceeding." RCW 26.27.021(5). Applying the plain language of the statute, the Kansas and Washington proceedings both commenced on March 29, 2012, when Justin and Wendy separately filed for divorce in their respective states.

Moreover, it is apparent from the record that the superior court was aware that the Kansas proceeding had commenced well before Justin filed copies of the Kansas proceedings with the superior court on July 6, 2012. In a pleading filed June 14, 2012, Justin indicated that "[i]t was very clearly stated at the previous hearing that an action had been started in Kansas but had been stayed to resolve the jurisdiction issue and the petitioner's petition for a protection order." The date of the referenced previous hearing is unclear from the record. However, it appears to reference a hearing before the commissioner on a date prior to the date on which the order of continuance was entered. Whatever the referenced hearing's actual date, the court was plainly informed of the Kansas proceeding, at the latest, on the day that the superior court judge granted the protection order. This was a week before the commissioner entered an order on jurisdiction, and nearly a month before the superior court judge issued her order on Wendy's motion for revision (from which she now appeals). The specific date on which Wendy was served is thus immaterial.

- 13 -

RCW 26.27.021(7).[10] For purposes of determining the home state, "[a] period of temporary absence of a child, parent, or person acting as a parent is part of the period." RCW 26.27.021(7).

On March 29, 2012, when Wendy filed for dissolution, she and H.M. had been present in Washington for only two-and-one-half months. Prior to their move to Washington, H.M. had spent the first six weeks of his life in Costa Rica and the next five-and-one-half months in Kansas. Because H.M. was not born in Washington and had not lived in Washington for at least six consecutive months immediately prior to the commencement of the proceeding, Washington was not his home state. See RCW 26.27.021(7).

The superior court could, nevertheless, properly exercise jurisdiction over H.M. if H.M. had no home state or if a court in H.M.'s home state had declined to exercise its jurisdiction and the "significant connection" and "substantial evidence" requirements of the UCCJEA were met. See RCW 26.27.201(1)(b).

The superior court judge concluded that Kansas was H.M.'s home state. Based upon her finding that, at the time of H.M.'s birth, both of his parents were residents of Kansas and intended to return to Kansas with him, the superior court judge determined that H.M.'s six weeks in Costa Rica constituted a "temporary absence" from Kansas and, thus, that H.M. had lived in Kansas for more than six consecutive months immediately before the commencement of the proceeding—

_____

[10] Justin asserts on appeal that Kansas is also H.M.'s home state pursuant to the "from birth" definition of "home state." Because we determine that Kansas was H.M.'s home state pursuant to the statute's "six consecutive months" provision, we do not address Justin's assertion that the "from birth" provision is applicable.

establishing Kansas as H.M.'s home state. The judge therefore determined that Washington's courts could not properly make an initial custody determination regarding H.M. unless the courts of Kansas declined to exercise their jurisdiction. They have not done so.

The UCCJEA explicitly includes "[a] period of temporary absence of a child, parent, or person acting as a parent" in the six-month time period necessary to establish a child's "home state." RCW 26.27.021(7). In evaluating whether an absence was intended to be temporary or permanent, courts of this and other states consider the parents' intent. A.R.K.-K., 142 Wn. App. at 303-04 (citing In Re Marriage of Payne, 79 Wn. App. 43, 52, 899 P.2d 1318 (1995)); In re Parentage of Frost, 289 Ill.App.3d 95, 681 N.E.2d 1030 (1997). Courts weigh a number of factors in order to determine whether an absence was temporary, including "the parent's purpose in removing the child from the state, rather than the length of the absence," "whether the parent remaining in the claimed home state believed the absence to be merely temporary," "whether the absence was of indefinite duration," and "the totality of the circumstances surrounding the child's absence." Sajjad v. Cheema, 428 N.J. Super. 160, 173, 51 A.3d 146 (2012) (citing Arnold v. Harari, 772 N.Y.S.2d 727, 729-30, 4 A.D.3d 644 (2004); Consford v. Consford, 711 N.Y.S.2d 199, 205, 271 A.D.2d 106 (2000); Chick v. Chick, 164 N.C.App. 444, 449, 596 S.E.2d 303 (2004); Sullivan v. Sullivan, 2004 UT App. 485, ¶12, 105 P.3d 963, 966. Courts have found that "temporary absences include court-ordered visitations, and vacations and business trips." Sajjad, 428 N.J. Super. at 173 (citing Alley v. Parker, 1998 ME 33, ¶ 5, 707 A.2d

77, 78; In re Lewin, 149 S.W.3d. 727, 739 (Tex. App. 2004)).

Here, the superior court judge correctly determined that the six weeks H.M. spent in Costa Rica at the beginning of his life constituted a temporary absence from Kansas because his parents intended that time to be merely a temporary visit. Cf. Payne, 79 Wn. App. at 52 (concluding that, where a father moved to Washington "with the intention of moving permanently," his absence from Virginia was not temporary).

The superior court judge found that, during the time that Wendy, Justin, and H.M. were in Costa Rica, both Wendy and Justin were Kansas residents and that both parents intended to return to Kansas with H.M. The court further found that H.M. was born in Costa Rica because his parents wanted him to enjoy dual citizenship. Moreover, the court found no evidence that Wendy had established Costa Rica as her permanent residence. Wendy has not challenged these factual findings; they are, therefore, verities on appeal. In re Estate of Jones, 152 Wn.2d 1, 8, 93 P.3d 147 (2004). These findings support the trial court judge's conclusion that H.M.'s "absence from Kansas from his date of birth on June 15, 2011 was a temporary absence as to both [H.M.] and his parents."[11]

Wendy argues, however, that H.M.'s time in Costa Rica was not a "temporary absence." This is so, she asserts, because H.M. had never been "present" in Kansas. Thus, she avers, H.M. cannot have been absent from

---

[11] The temporary absence provision refers to both "a child" and "a parent." Pursuant to RCW 26.27.021(7), both parents (Wendy and Justin) were "temporarily absent" from Kansas while in Costa Rica. The superior court judge rightfully concluded that the status of the parents supported the same finding with regard to their child, who had been in the physical custody of one or both parents during the entire time that the child was in Costa Rica.

Kansas. Wendy bases this contention on her assertion that the UCCJEA's use of the term "lived" mandates that a child be physically present somewhere before a temporary absence can begin.[12] However, this strained interpretation of the statute would lead to the absurd result that a newborn child does not "live" in the same state as that in which the child's parents both "live" when the mother gives birth outside of the state of which she and the father are both resident even when both parents intend to return to that state with the child. When construing statutes, "[i]t is fundamental that . . . we avoid absurd results." Lowy v. PeaceHealth, 174 Wn.2d 769, 779, 280 P.3d 1078 (2012). The superior court judge correctly rejected this untenable interpretation of the UCCJEA.

Because H.M.'s time in Costa Rica was a temporary absence from Kansas, the superior court judge properly included that six-week period in determining the length of time that H.M. had "lived" in Kansas prior to the commencement of the dissolution proceeding. RCW 26.27.021(7) (defining "home state").[13] H.M. thus "lived with a parent" in Kansas "for at least six

---

[12] Wendy cites to numerous out-of-state decisions in asserting that, in order to establish Kansas as H.M.'s home state, H.M. was required to be physically present in Kansas throughout the six-month period. See Sajjad, 428 N.J.Super. 160; In re Marriage of Marsalis, 338 S.W.3d 131 (Tex. App. 2011); Karam v. Karam, 6 So.3d 87 (Fla. App. 3 Dist. 2009); Escobar v. Reisinger, 133 N.M. 487, 64 P.3d 514 (2003); In re Calderon-Garza, 81 S.W.3d 899 (Tex. App 2002). However, because these cases do not address the specific question here—whether a newborn child is temporarily absent from the state in which his or her parents live when both parents are, by definition, temporarily absent from the state and both parents intend to return with the child to that state—they are unhelpful.

[13] The "six consecutive months" definition of "home state" could be read to provide that a state may only be the home state if the child lived in that state on the date that the proceeding was commenced. See RCW 26.27.021(7) (defining "home state" as "the state in which a child lived . . . for at least six consecutive months *immediately before* the commencement of a child custody proceeding" (emphasis added)). However, such a reading conflicts with the "initial child custody jurisdiction" provision of the UCCJEA, which provides that a court may properly exercise jurisdiction if it "was the home state of the child *within six months before the commencement of*

consecutive months immediately before the commencement of [the] child custody proceeding." RCW 26.27.021(7). As a result, Kansas was H.M.'s "home state . . . within six months before the commencement of the proceeding," RCW 26.27.201(1)(a), and, although H.M. was absent from Kansas when the proceeding commenced, Justin, his father, continued to live in that state. Accordingly, the superior court judge properly determined that Washington's courts could exercise their jurisdiction to make a custody determination involving H.M. only if Kansas's courts "declined to exercise jurisdiction on the ground that this state is the more appropriate forum." RCW 26.27.201(1)(b). No Kansas court has done so.

The superior court judge thus correctly determined that, where both parents intend a child's absence from a state to be temporary, the duration of

---

*the proceeding* and the child is absent from this state but a parent or person acting as a parent continues to live in this state." RCW 26.27.201(1)(a) (emphasis added). This court must "give effect to all statutory language, considering statutory provisions in relation to each other and harmonizing them to ensure proper construction." Evergreen Washington Healthcare Frontier LLC v. Dep't of Soc. & Health Servs., 171 Wn. App. 431, 444, 287 P.3d 40 (2012), review denied, 176 Wn.2d 1028 (2013). "Immediately" does not necessarily refer to temporal proximity; rather, it also means "without intermediary," "in direct connection or relation," or "closely." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1129 (2002). The conflicting home state provisions of the UCCJEA are harmonized when the term "immediately" is interpreted as meaning "without intermediary."

Numerous courts in other states have resolved this conflict similarly. These courts have concluded that a state may properly exercise jurisdiction where it was the home state of the child within six months before the commencement of the proceeding. See In re Matter of Christine L. v. Jason L., 23 Misc.3d 1039, 874 N.Y.S.2d 794 (2009); Rosen v. Celebrezze, 117 Ohio.St.3d 241, 883 N.E.2d 420 (2008); Stephens v. Fourth Judicial Dist. Court, 331 Mont. 40, 128 P.3d 1026 (2006); Welch-Doden v. Roberts, 202 Ariz. 201, 42 P.3d 1166 (2002). A literal reading of the "home state" definition, the courts reasoned, would render superfluous the language found in the initial child custody jurisdiction provision. Christine L., 23 Misc.3d at 1043; see also Welch-Doden, 202 Ariz. at 205. Moreover, "[g]iven the fundamental purpose of the UCCJEA to establish the certainty of home state jurisdiction," the initial child custody jurisdiction provision "acts to enlarge and modify the definition of home state." Welch-Doden, 202 Ariz. at 208. Thus, these courts resolved the "statutory conflict in the application of home state jurisdiction in a manner consistent with the UCCJEA's intent of strengthening the certainty of home state jurisdiction." Stephens, 331 Mont. at 44.

that absence must be counted toward the establishment of a home state pursuant to the UCCJEA, even if the child is born during that absence.[14]

IV

Wendy further contends that the superior court judge was precluded by the UCCJEA from declining to exercise jurisdiction to make a custody determination involving H.M. because a different superior court judge had previously entered a protection order indicating that Washington was exercising temporary emergency jurisdiction. However, the UCCJEA does not preclude a superior court that has exercised temporary emergency jurisdiction from later determining that it cannot, in fact, properly exercise non-temporary jurisdiction. Thus, Wendy's claim is unavailing.

Where a superior court is not authorized to exercise its jurisdiction pursuant to RCW 26.27.201, it may nevertheless exercise "temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with abuse." RCW 26.27.231. If there is no previous child custody determination entitled to be

---

[14] Wendy additionally contends that the superior court judge erred by adopting the commissioner's decision to decline to exercise jurisdiction in favor of Kansas because, she asserts, Washington has jurisdiction pursuant to the "significant connection" provision of RCW 26.27.201. However, once the superior court judge determined that Kansas was H.M.'s home state pursuant to the UCCJEA, it could not properly exercise its jurisdiction unless a Kansas court first declined to exercise its jurisdiction. No Kansas court has done so. Therefore, the superior court judge correctly determined that Washington courts could not properly exercise jurisdiction pursuant to RCW 26.27.201(1)(b).

Similarly, Wendy contends that the commissioner failed to properly consider the factors necessary to determine whether Washington was an "inconvenient forum" pursuant to RCW 26.27.261(1). Because we determine that the superior court judge correctly found that Kansas was H.M.'s home state, we need not reach this question.

enforced pursuant to the UCCJEA and no custody proceeding has been commenced in a court having jurisdiction pursuant to RCW 26.27.201 through RCW 26.27.221, then a "child custody determination" made by a court exercising temporary emergency jurisdiction "remains in effect until an order is obtained from a court of a state having jurisdiction under RCW 26.27.201 through RCW 26.27.221." RCW 26.27.231(2). If, on the other hand, there *is* a previous child custody determination entitled to be enforced, or a custody proceeding has been commenced in a state having jurisdiction pursuant to RCW 26.27.201 through RCW 26.27.221, then an order issued by a Washington court while exercising temporary emergency jurisdiction "must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction" pursuant to RCW 26.27.201 through RCW 26.27.221. RCW 26.27.231(3).

A "child custody determination" is "a judgment, decree, parenting plan, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child." RCW 26.27.021(3). It is not a court's determination of its own jurisdictional authority. Indeed, the UCCJEA does not bind a superior court to an initial, temporary determination of its own jurisdictional authority. Wendy cites to no authority indicating otherwise.

The superior court judge was therefore not precluded by the prior judge's earlier exercise of temporary emergency jurisdiction from later finding that the court could not properly exercise jurisdiction pursuant to the UCCJEA and,

therefore, could not further exercise authority over custody determinations regarding H.M.

V

Wendy finally asserts that, because the superior court had exercised temporary emergency jurisdiction, the superior court judge was required to communicate with the Kansas court prior to determining that the superior court could not properly exercise its jurisdiction pursuant to the UCCJEA. We disagree.

In making this claim, Wendy relies upon two distinct UCCJEA provisions regarding communication between courts of different states. Both provisions, RCW 26.27.251(2) and RCW 26.27.231(4), require judges of Washington courts to communicate with judges of courts of another state before performing or continuing to perform a specific act. A superior court, "before hearing a child custody proceeding," must examine the information provided by the parties. RCW 26.27.251(2). If the superior court determines that a proceeding has been commenced in another state's courts, the statute requires that the court "stay its proceeding and communicate with the court of the other state." RCW 26.27.251(2). Where a superior court is asked to make a "child custody determination" by exercising temporary emergency jurisdiction, the court "shall immediately communicate" with the court of another state upon being informed that a proceeding has been commenced in that state. RCW 26.27.231(4).

These provisions are to be interpreted in light of the legislative purpose of the UCCJEA as a whole. Optimer Int'l, Inc. v. RP Bellevue, LLC, 151 Wn. App.

954, 963, 214 P.3d 954 (2009), aff'd, 170 Wn.2d 768, 246 P.3d 785 (2011) ("The primary goal of statutory construction is to discern and carry out the legislature's intent."). The UCCJEA was enacted in order to "deal with the problems of competing jurisdictions entering conflicting interstate child custody orders." A.C., 165 Wn.2d at 574. Thus, its purpose is to "reduce conflicting orders regarding custody and placement of children." A.C., 165 Wn.2d at 574. The provisions of the UCCJEA requiring communication between the courts of different states are clearly intended to further the legislative purpose of reducing conflicting child custody orders. Indeed, RCW 26.27.231(4) requires communication prior to entry of a "child custody determination." Likewise, RCW 26.27.251(2) requires that the court confer with the court of another state "before hearing a child custody proceeding."

Here, the superior court judge made no "child custody determination" and heard no "child custody proceeding" when entering her July 9 order. See RCW 26.27.021(3), (4). To the contrary, the superior court judge determined that the court was not authorized to exercise its jurisdiction pursuant to the UCCJEA and, thus, should not make a child custody determination involving H.M. The judge's determination, therefore, pertained to the court's authority to exercise its jurisdiction, not to child custody. Pursuant to the plain language of the statute, the superior court judge was not required to communicate with the Kansas court in order to determine whether the Washington court had authority to exercise its jurisdiction. Requiring the superior court to communicate with the court of

- 22 -

another state before determining its own authority to act would not further the legislative purpose underlying the UCCJEA.[15]

Affirmed.

We concur:

---

[15] Justin has filed a motion to dismiss this appeal, which has been denied by this court. In a response to Justin's motion, Wendy requests an award of Civil Rule (CR) 11 sanctions against Justin. Her request is denied.