# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| CHRISTIEN FREEMAN, | ) | No. 75420-3-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEVEN ALLEN WALLACE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: April 17, 2017 |
| | ) | |

VERELLEN, C.J. — Christien Freeman appeals a 2016 King County Superior Court order denying her CR 60(b) motion to vacate 2011 Tennessee court orders for support and custody.

Because the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA)[1] is not the source of a court's subject matter jurisdiction but merely authorizes a court to exercise its jurisdiction, the Tennessee court orders are not void for lack of subject matter jurisdiction. Freeman also failed to offer evidence that she was not provided notice and an opportunity to be heard in the Tennessee court. Therefore, the superior court did not err in denying Freeman's motion under CR 60(b)(5).

And because Freeman did not provide compelling evidence that the Tennessee orders were no longer equitable or that there were irregularities extraneous to the action of

---

[1] Ch. 26.27 RCW.

the court or questions concerning the regularity of the court's proceedings, her arguments for relief under CR 60(b)(6) and (11) also fail.

We affirm.

## FACTS

Christien Freeman (mother) and Steven Wallace (father) met in Washington and had a child, L.W., in February 2009. After the mother and father ended their dating relationship, the mother and L.W. moved in with the maternal grandmother in Auburn, Washington. The Washington State Department of Health and Social Services (DSHS) entered a consent order in December 2009 listing the mother as the custodial parent and the father as the noncustodial parent. Under the order, the father owed $294 per month.

The father moved to Tennessee in 2010. It is undisputed that the mother, the father, and L.W. were in Tennessee in February 2011. On February 22, 2011, the father petitioned the Hickman County Juvenile Court in Tennessee for custody of L.W. The Tennessee court entered a temporary order and set a hearing for March 3, 2011.

According to the father's affidavit, on February 15, the mother called him and said, "[C]ome and pick up your daughter. I am having a breakdown and I'm freaking out and do not know what to do."[2] The father said the mother would not tell him where she was and that he was "not allowed over there."[3] The father then met the mother, and she left L.W. with the father "without saying anything."[4] She also "would not tell [the father] how long

---

[2] Clerk's Papers (CP) at 75.

[3] Id.

[4] Id.

2

she was staying or how long she would be in Tennessee."[5] The father also said that on February 18, he received information from the King County Sherriff's Office about an outstanding warrant for the mother's arrest. The father said he was

> fearful that [L.W.] will be placed in foster care if the mother is arrested. The mother does not have any visible means of support and does not have a place to live. She came to Tennessee to meet with a man she met on-line while living in Washington [s]tate with her mother.[6]

The Tennessee court entered orders on March 3 and March 7, 2011, awarding the father "exclusive custody" and financial support.[7] The orders recite that the mother was properly served, but she never appeared before the Tennessee court or responded to the petition.

The mother, the father, and L.W. moved back to Washington "at the end of July or early August" 2011.[8] A brief reconciliation between the mother and the father was unsuccessful. In September 2011, after "six to eight weeks" when L.W. stayed with the mother, the father "came and removed [L.W.] from [the mother's] home due to the custody order from Tennessee."[9]

In 2012, the mother received a notice and finding of financial responsibility from DSHS. The notice listed the mother as the noncustodial parent, the father as the custodial parent, and included a current support responsibility and a past-due support amount.

---

[5] Id.

[6] Id.

[7] CP at 65-69.

[8] CP at 11.

[9] Id.

On January 4, 2016, a King County Superior Court commissioner denied the mother's motion for major modification of the Tennessee custody order, but the court did find a basis for minor modification and allowed the mother residential time on alternating weekends. A superior court judge denied the mother's subsequent motion for revision.

The mother moved for relief from the Tennessee orders under CR 60(b) on May 16, 2016. The mother argued the Tennessee court lacked jurisdiction under the UCCJEA.[10] In the mother's declaration attached to her CR 60(b) motion, she said that she and L.W. went to Tennessee to visit with the father and his family, along with the mother's grandfather. The court denied her motion, and ruled:

> The problem the Court has is that this order is from a different jurisdiction, and is five years old, and is not—I mean, the Mother was aware of this order at the time. [Looking] under CR 60, you're correct in one respect, the one [year] time limit talks about, all subsections, 1, 2, and 3, but it also says the motion [is] to be made within a reasonable time.
>
> And I'm just not finding that five years is a reasonable time to address it, but also, I don't think this Court has jurisdiction to undo Tennessee. I don't know what happened in Tennessee. I don't know what record may be contained there. I mean, you're asking me to put myself in the shoes of another state and determine that they acted fraudulently under the UCCJEA. I don't know what they considered.[11]

The mother appeals the order denying her CR 60(b) motion.[12]

---

[10] CP at 52.

[11] Report of Proceedings (June 6, 2016) at 8.

[12] The limited record does not provide the complete context of the Tennessee court or administrative agency analysis of the various support orders.

4

## ANALYSIS

We review a ruling on a motion to vacate under CR 60(b) for abuse of discretion.[13] A court abuses its discretion when its decision is based on untenable grounds or reasoning.[14] "The motion shall be made within a reasonable time."[15] An appeal from the denial of a CR 60(b) motion is not a substitute for an appeal and is limited to the propriety of the denial, not the impropriety of the underlying order.[16]

### I. CR 60(b)(5)

The mother contends the Tennessee order is void because the Tennessee court lacked subject matter jurisdiction under the UCCJEA to enter a custody order.

The superior court may, upon a party's motion, relieve a party from an order if the judgement is void.[17] We review a CR 60(b)(5) motion to vacate a final order as void for lack of jurisdiction de novo.[18]

The UCCJEA was promulgated to reduce the instances of "'competing jurisdictions entering conflicting interstate child custody orders, forum shopping, and the drawn out and complex child custody legal proceedings often encountered by parties where multiple states are involved.'"[19] Both Washington and Tennessee have adopted the UCCJEA.[20]

---

[13] Barr v. MacGugan, 119 Wn. App. 43, 46, 78 P.3d 660 (2003).

[14] Id.

[15] CR 60(b).

[16] Bjurstrom v. Campbell, 27 Wn. App. 449, 450-51, 618 P.2d 533 (1980).

[17] CR 60(b)(5).

[18] In re Marriage of Wilson, 117 Wn. App. 40, 45, 68 P.3d 1121 (2003).

[19] In re Marriage of McDermott, 175 Wn. App. 467, 483, 307 P.3d 717 (2013) (quoting In re Custody of A.C., 165 Wn.2d 568, 574, 200 P.3d 689 (2009)).

[20] RCW 26.27.011; TENN. CODE ANN. 36-6-201.

"The consequences of a court acting without subject matter jurisdiction are 'draconian and absolute.'"[21] "The critical concept in determining whether a court has subject matter jurisdiction is the type of controversy."[22] "If the type of controversy is within the subject matter jurisdiction, then all other defects or errors go to something other than subject matter jurisdiction."[23] It is critical to distinguish between the term "subject matter jurisdiction" and a court's *authority to rule* in a particular matter.[24] "The UCCJEA, as adopted by the Washington legislature, does not—and cannot—divest a superior court of subject matter jurisdiction" over custody matters.[25]

Contrary to the mother's assertion, the UCCJEA is not the source of, nor does it impose limits on, a court's subject matter jurisdiction. As our Supreme Court has acknowledged, subject matter jurisdiction arises from the constitution.[26] The term

---

[21] McDermott, 175 Wn. App. at 479 (quoting Cole v. Harveyland, LLC, 163 Wn. App. 199, 205, 258 P.3d 70 (2011)).

[22] Cole, 163 Wn. App. at 209.

[23] Id.

[24] Marley, 125 Wn.2d 533, 539, 886 P.2d 189 (1994); see In re Major, 71 Wn. App. 531, 534-35, 859 P.2d 1262 (1993).

[25] McDermott, 175 Wn. App. at 479; see also In re S.L.M. & T.J.M., 207 S.W.3d 288, 296 (Tenn. Ct. App. 2006) ("*The UCCJEA does not confer subject matter jurisdiction* on juvenile courts to decide custody matters. By its own terms, *the Act is a tool* that is available only to courts that are 'authorized under state law to establish, enforce, or modify a child custody determination.'") (emphasis added).

[26] See In re Custody of A.C., 165 Wn.2d 568, 582 n.3, 200 P.3d 689 (2009) ("The UCCJEA uses the term 'subject matter jurisdiction,' and for consistency we use the statutory language. However, Washington courts did, in fact, have subject matter jurisdiction over the parties and the issues. See CONST. ART. IV, § 6 (describing general jurisdiction of superior courts); Dougherty v. Dep't of Labor & Indus., 150 Wn.2d 310, 316-17, 76 P.3d 1183 (2003) (subject matter jurisdiction concerns the type of controversy, not the facts of an individual case). The statute might have more accurately used the term 'exclusive venue' instead of 'subject matter jurisdiction.'").

6

"jurisdiction" is used to be consistent with the UCCJEA's terminology.[27] And as this court has acknowledged, the UCCJEA uses the term "jurisdiction" but not "subject matter jurisdiction" in its text.[28] The mother makes no showing of a lack of subject matter jurisdiction.

Further, whether a superior court has the *authority to exercise* its jurisdiction under the UCCJEA is a mixed question of law and fact.[29] The UCCJEA contains provisions extending to emergency circumstances.[30] Viewed in the light most favorable to the father, the mother left L.W. with the father, not just for visitation. The mother does not establish that the Tennessee court lacked authority to act.

The mother also argues the Tennessee court's order is void for lack of personal jurisdiction because she did not receive notice that the father would be seeking support or a modification of the DSHS order in the Tennessee court. And because the Tennessee order was entered by default, the mother contends she was denied due process.

To grant relief beyond that sought in the complaint without notice and an opportunity to be heard is a denial of procedural due process.[31]

But here, the mother admits in her declaration that she "received two or three days' notice of the hearing."[32] The Tennessee court order includes that "[the mother] was

---

[27] McDermott, 175 Wn. App. at 482 ("Nevertheless, for consistency, the court decided to use the statutory language throughout its opinion.") (citing A.C., 165 Wn.2d at 573 n.3.).

[28] Id. at 482 n.6.

[29] Id. at 483.

[30] RCW 26.27.231; TENN. CODE ANN. 36-6-219(b).

[31] In the Matter of Marriage of Leslie, 112 Wn.2d 612, 617, 772 P.2d 1013 (1989).

[32] CP at 10.

properly serviced with notice of these proceedings" and that she did not appear.[33] She did not provide King County Superior Court with evidence to support her theory that she was somehow unaware of the Tennessee orders while she remained in Tennessee, reconciled with the father, and moved back to Washington with the father and L.W.

Alternatively, the mother points to the administrative order of support from DSHS in December 2009. The mother argues, under the Uniform Interstate Family Support Act (UIFSA),[34] only Washington had "exclusive continuing jurisdiction to modify that order."[35] She contends the Tennessee support order is void because the Tennessee court did not meet the statutory requirements to modify another state's support order and therefore "infringed on Washington's exclusive continuing jurisdiction over that issue."[36]

UIFSA merely limits a trial court's authority to modify another state's child support order, not its jurisdiction. Our Supreme Court confronted a similar issue in In re Schneider,[37] and reasoned:

> More properly read, RCW 26.21A.550(1) deprives the trial courts of the authority to issue a particular form of relief—here, an order modifying child support—when its conditions are not met. *A court that grants relief beyond the scope of its authority commits an error of law but does not exceed its subject matter jurisdiction.*[38]

Here, the Tennessee order does not purport to modify a preexisting order. Even if the Tennessee court granted relief beyond the scope of its authority under UIFSA, it would

---

[33] CP at 65-66.

[34] Ch. 26.21A RCW.

[35] Appellant's Br. at 18.

[36] Id.

[37] 173 Wn.2d 353, 362, 268 P.3d 215 (2011).

[38] Id. (emphasis added).

amount to an *error of law*, not a lack of jurisdiction. Our courts have recognized, "'errors of law are deemed to be adequately protected against by the availability of the appellate process'" by an appeal from the judgment, not by appeal of a CR 60(b) motion.[39]

We conclude the court did not err when it denied the mother's CR 60(b)(5) motion because she did not establish the Tennessee court orders were void for lack of subject matter or personal jurisdiction. At most, the mother alleges the Tennessee court granted relief beyond its authority, but that should have been raised as an error of law in an appeal from those orders, as opposed to an appeal from a CR 60(b)(5) motion.

## II. CR 60(b)(6) and (11)

The mother argues the trial court abused its discretion when it denied her motion for relief under CR 60(b)(6) and (11).

CR 60(b)(6) allows relief from judgment when it is no longer equitable that the judgment should have prospective application. "This provision allows the trial court to address problems arising under a judgment that has continuing effect 'where a change in circumstances after the judgment is rendered makes it inequitable to enforce the judgment.'"[40]

Here, the mother argues that the father obtained the Tennessee order of support "by fraud and procedural irregularities" but she fails to point to evidence in the record to

---

[39] In re Marriage of Furrow, 115 Wn. App. 661, 674, 63 P.3d 821 (2003) (quoting Philip A. Trautman, *Vacation and Correction of Judgments in Washington,* 35 WASH. L. REV. 505, 515 (1960)); see also Bjurstrom, 27 Wn. App. at 451 ("The exclusive procedure to attack an allegedly defective judgment is by appeal from the judgment, not by appeal from a denial of a CR 60(b) motion.").

[40] Pac. Sec. Companies v. Tanglewood, Inc., 57 Wn. App. 817, 820, 790 P.2d 643 (1990) (quoting Metropolitan Park Dist. v. Griffith, 106 Wn.2d 425, 438, 723 P.2d 1093 (1986)).

support her claim.[41] The mother also claims that she "accrued arrearages under two competing orders."[42] Again, she does not offer any compelling evidence in the record to support her assertion.

Under CR 60(b)(11), the court has discretion to vacate an order for "[a]ny other reason justifying relief from the operation of the judgment."[43] But this subsection is "reserved for situations involving extraordinary circumstances not covered by any other section of CR 60(b)."[44] Those situations "must relate to 'irregularities extraneous to the action of the court or questions concerning the regularity of the court's proceedings.'"[45] The mother does not establish such irregularities or extraordinary circumstances.

Notably, the court denied the mother CR 60(b)(6) and (11) relief, in part, because she did not bring her motion within a *reasonable* time.[46] In her declaration, she said L.W. stayed with the father except for a "six to eight" week period in 2011 after the mother and the father moved back to Washington.[47] The mother also received a notice from DSHS in late December 2012, yet did not move to modify the Tennessee orders until January 2016 and did not move to vacate the orders until May 2016. The mother failed to provide evidence warranting such a delay in challenging the 2011 Tennessee orders.

---

[41] Appellant's Br. at 19-20.

[42] Id. at 20.

[43] In re Marriage of Furrow, 115 Wn. App. 661, 673, 63 P.3d 821 (2003).

[44] Id.

[45] Id. (quoting In re Marriage of Yearout, 41 Wn. App. 897, 902, 707 P.2d 1367 (1985)).

[46] See In re Marriage of Thurston, 92 Wn. App. 494, 500, 963 P.2d 947 (1998) ("a CR 60(b)(11) motion must be brought within a 'reasonable time.'").

[47] CP at 11.

## CONCLUSION

The mother does not establish a void order or judgment as required under CR 60(b)(5). She does not establish the trial court abused its discretion in denying her relief under CR 60(b)(6) and (11).

We affirm.

WE CONCUR:

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2017 APR 17 AM 9:46