DONALDSON, Judge.
This is an appeal from a judgment of the Mobile Juvenile Court (“the juvenile court”) regarding custody of a child. The sole issue is whether the juvenile court had subject-matter jurisdiction over the proceedings pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (“UCCJEA”). We hold that the juvenile court had subject-matter jurisdiction, and accordingly, we affirm the judgment.

Facts and Procedural History

The parties to this appeal are the unmarried parents of a minor child, C.H.Y. (“the child”), who was born on June 14, 2010, in Mississippi. At all relevant times, C.Y. (“the father”) lived in the same residence in Chunchula,'Alabama. J.H. (“the mother”) lived in a residence in Lucedale, Mississippi, for approximately the first eight months after the child’s birth. When the child was about eight months old, the mother and the child moved in with the mother’s aunt, who also lived in Lucedale. *235 The mother and the child then moved to Jackson, Mississippi, where the mother attended school. After three months, the mother was expelled from the school. The mother and the child then moved to Chun-chula to live with the father. The mother and the child lived with the father in Alabama from October 30 or 31, 2011,[1] until January 10, 2012, when the mother and the child moved back to Lucedale.
The parties were not subject to a visitation order of any court, yet the father maintained informal visitation with the child at different times before the mother and the child moved in with him. After the mother and the child moved back to Mississippi in January 2012, the child visited with the father every other weekend at his home in Alabama.
On May 18, 2012, the child came to Alabama for a visit with the father. On May 21, 2012, the father filed a petition in the juvenile court seeking custody of the child.[2] A guardian ad litem was appointed to represent the child. Both parties appeared before the juvenile court on October 15, 2012, for a hearing. No transcript of that hearing has been provided to this court, but the record shows that the hearing was continued to permit the mother to retain counsel. The father subsequently filed a motion seeking an order requiring the mother to return the child to him. In the motion, the father alleged that the juvenile court had stated at the October 15, 2012, hearing that the child should remain in the custody of the father and that the mother had failed to return the child from visitation. A hearing on the father’s motion was scheduled for February 15, 2013. On February 14, 2013, an attorney filed an appearance on behalf of the mother, along with a motion to dismiss the father’s custody petition, asserting that the Mississippi courts had exclusive subject-matter jurisdiction over the proceeding. The mother claimed that the child had resided in Mississippi for the majority of the child’s life and had not lived in Alabama for a sufficient period before the father filed his petition seeking custody. The mother further asserted that she was a Mississippi resident and that she had not lived in Alabama for a sufficient period for the juvenile court to have obtained jurisdiction over her.
On February 26, 2013, the father filed a response to the motion to dismiss. In an attached affidavit, the father stated that he had lived continuously in Alabama since the birth of the child. He asserted that the mother had resided with her grandmother in Citronelle, Alabama, for a few months in early 2011 and that the mother and the child had moved from Jackson, Mississippi, to live with him in Chunchula, where they had lived together from October 2011 until January 2012.
The record shows that the juvenile court held a hearing on February 27, 2013, to address the issue of subject-matter jurisdiction; however, no transcript of that hearing is contained in the record before *236 this court. On April 15, 2013, the juvenile court conducted a hearing on the petition for custody, and the hearing continued into the following day. Before testimony was taken, counsel for the mother “renewed” her objection to the juvenile court’s exercising subject-matter jurisdiction. The juvenile court denied the objection, and the proceeding continued with testimony regarding custody.
During the second day of the hearing, the juvenile court stated the following regarding the issue of subject-matter jurisdiction:
“I’m sticking with my finding of jurisdiction. I mean, I know you’ve got a jurisdictional issue, but I have heard testimony on it before, and I’ve heard testimony on it again yesterday. None of which I find to contradict my ruling that jurisdiction for the child is in Alabama. And I’m premising that, primarily on where I found the child to be living at the various times, okay? Not just necessarily where you were living. I as far as I’m concerned, you’re a Mississippi resident today as we sit here. And you’ve — but you’ve been a little bit back and forth, mostly Mississippi, but I’m finding that the child is a residen[t] of Alabama at the time that was relevant to these proceedings.”
The mothers’ attorney later asked the juvenile court to clarify the basis for the ruling on the issue of subject-matter jurisdiction:
“[Mother’s attorney]: Your ruling on jurisdiction is based on the child living in Alabama?
“THE COURT: The residency — what I find to be the places the child lived and when. And I’m finding the child to be a resident of the State of Alabama at the pertinent times in determining — based on his filings dates and what was going on during that time. That’s — that’s my ruling.”
The juvenile court then announced that a written order would be entered providing for the father to have temporary physical custody of the child, with visitation times provided to the mother. The juvenile court stated that a final hearing would be scheduled to begin on October 21, 2013. On April 16, 2013, the juvenile court entered an order for the father to have temporary physical custody of the child. The order granted the mother visitation rights on alternating weekends and for the month of July.
On April 29, 2013, the mother filed a motion to reconsider or to clarify the April 16, 2013, order. The mother requested that the juvenile court reconsider its ruling determining that the court had subject-matter jurisdiction. In that motion, the mother referred to the hearing held on February 27, 2013, and stated:
“That while [the father] did offer testimony that the residence where [the mother] resided with [the child] in question during the six month period preceding the filing of his petition was close to the Alabama State Line, he offered no specific proof of the boundary between Mississippi and Alabama with respect to that residence.”[3]
The mother also filed a motion to amend the April 16, 2013, order to allow alternating weeks of visitation rather than alternating weekend visitations. On May 8, 2013, the juvenile court entered orders denying both the motion to reconsider and the motion to amend.
*237 On October 21, 2013, the juvenile court conducted a final hearing and heard testimony from the parties and their witnesses. The evidence addressed the character of the mother and the father, their parenting skills, the suitability of their residences and home environments for the child, and the child’s activities in Alabama. At the hearing, the mother testified as follows regarding her move with the child to Alabama in October 2011:
“Q. And then you came back from Jackson. Where did you move when you left Jackson?
“A. [The father’s] house.
“Q. Okay. And wh/d you move back to [the father’s] house?
“A. Because we were trying to work out things for our son’s sake, and it didn’t work out.
“Q. Okay. And when it didn’t work ' out, you went back to Mississippi?
“A. Yes, sir.”
On October 28, 2013, the juvenile court entered a judgment ordering that the parties would have joint legal custody of the child with the father having primary physical custody, and ordering that the mother would have visitation rights. The judgment contained the following findings:
“1. For the first 23 months of the child’s life the child lived primarily with the mother, and the father visited on a regular basis.
“2. It is disputed that the father contributed substantial support to the child during said 23 months but it is undisputed that he did contribute some financial support.
“3. The Court finds that the father’s current circumstances are such that placement of the child with the father would promote the child’s best interest, and that it would be in the best interest of the child that primary custody of the child be awarded to the father.
“4. The Court finds that the mother’s current circumstances are difficult to ascertain in part because of the uncertainty of her testimony, and because she gave false testimony on more than one pertinent issue. The mother’s false testimony was even contradicted by her own witness.
“5. From the foregoing the Court concludes that the best interest of the child would be an award of joint legal custody to the parties with primary physical custody to the father and the Court’s standard visitation awarded to the mother.”
On November 8, 2013, the mother filed a motion to alter, amend, or vacate the October 28, 2013, judgment. On November 12, 2013, the juvenile court denied the mother’s motion. On November 26, 2013, the mother filed a timely notice of appeal to this court.

Discussion

The mother’s sole contention is that the juvenile court did not have subject-matter jurisdiction to adjudicate an initial child-custody determination.
“ ‘ “[S]ubject-matter jurisdiction may not be waived; a court’s lack of subject-matter jurisdiction may be raised at any time by any party and may even be raised by a court ex mero mota.” ’ S.B.U. v. D.G.B., 913 So.2d 452, 455 (Ala.Civ.App.2005) (quoting C.J.L. v. M.W.B., 868 So.2d 451, 453 (Ala.Civ.App.2003)). Questions of law, such as whether a court has subject-matter jurisdiction, are reviewed de novo. BT Sec. Corp. v. W.R. Huff Asset Mgmt. Co., 891 So.2d 310 (Ala.2004).”
K.R. v. Lauderdale Cnty. Dep’t of Human Res., 133 So.3d 396, 403-04 (Ala.Civ.App.2013). “An Alabama circuit or juvenile *238 court may not make any custody determination ... regarding a child unless that court has jurisdiction to make an initial custody determination under the UC-CJEA. ...” B.N. v. Madison Cnty. Dep’t of Human Res., 151 So.3d 1115, 1119 (Ala.Civ.App.2014).
The mother’s argument centers on her assertion that Mississippi was the home state of the child under the UCCJEA. Both Alabama and Mississippi have adopted the UCCJEA. See § 30-3B-101 et seq., Ala.Code 1975, and Miss.Code. Ann., § 93-27-101 et seq. The UCCJEA provides the basis for determining which state has jurisdiction to make an initial child-custody determination. Section 30-3B-201 codifies that framework and governs the determination of jurisdiction for an initial child-custody determination in Alabama.
“(a) Except as otherwise provided in Section 30-3B-204, a court of this state has jurisdiction to make an initial child custody determination only if:
“(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
“(2) A court of another state does not have jurisdiction under subdivision (l)„or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 30-3B-207 or 30-3B-208, and:
“a. The child and the child’s parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
“b. Substantial evidence is available in this state concerning the child’s care, protection, training, and personal relationships;
“(3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 30-3B-207 or 30-3B-208; or
“(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3).
“(b) Subsection (a) is the exclusive jurisdictional basis for making a child custody determination by a court of this state.
“(c) Physical presence of a child is not necessary or sufficient to make a child custody determination.”
The corresponding Mississippi codification of the UCCJEA is essentially the same as the Alabama version. See, e.g., Miss.Code Ann., § 93-27-201 (differing from § 30-3B-201 only in its references to other statutory sections).
We will first examine whether Mississippi or Alabama was the child’s home state as defined under the UCCJEA. See B.N. v. Madison Cnty. Dep’t of Human Res., 151 So.3d at 1119 (“jurisdiction [to make an initial custody determination under the UCCJEA] typically turns on whether Alabama is the home state of the child”). Section 30-3B-102(7), Ala.Code 1975, defines “home state” as
“[t]he state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of *239 a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of the child or any of the mentioned persons is part of the period.”
As our supreme court explained in Ex parte Siderius, 144 So.3d 319 (Ala.2013), § 30-3B-201(a)(1) contains two provisions for identifying if a home state exists for purposes of determining jurisdiction. Under the first provision, a state is a home state if the child has lived in the state with a parent for at least six consecutive months immediately before the commencement of the proceeding, allowing for temporary absences from the state. The second provision of § 30 — 3B—201(a)(1) extends the time frame of the first provision by providing for jurisdiction if the state “was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.” (Emphasis added.)
The child in this case lived in Mississippi from his birth in June 2010 until October 30 or 31, 2011, when he moved to Alabama and lived in this state until January 10, 2012. The underlying proceeding began on May 21, 2012, when the father filed the petition for custody. Section 30-3B-102(7) allows for temporary absences to be included in determining the six-consecutive-month period necessary for establishing home-state status. Thus, if the child’s presence in Alabama from October 2011 until January 2012 was only a temporary absence from Mississippi, then Mississippi was the child’s home state under the first provision of § 30-3B-201(a)(1).
“ ‘[Cjourts have found that “temporary absences include court-ordered visitations, and vacations and business trips.” ’ In re Marriage of McDermott, 175 Wash.App. 467, 487, 307 P.3d 717, 727 (2013) (emphasis added). ‘[Wjhere both parents intend a child’s absence from a state to be temporary, the duration of that absence must be counted toward the establishment of a home state pursuant to the UCCJEA....’ 175 WashApp. at 489-90, 307 P.3d at 728. ‘[Tjemporary absences do not interrupt the six-month pre-complaint residency period necessary to establish home state jurisdiction.’ Ogawa v. Ogawa, 125 Nev. 660, 662, 221 P.3d 699, 700 (2009).”
Ex parte Siderius, 144 So.3d at 325.
The mother does not argue that the child’s residence in Alabama from October 2011 until January 2012 was a temporary absence from Mississippi, and the evidence establishes that the mother intended for their move to Alabama to be permanent. Therefore, because the child did not reside in Mississippi or Alabama for at least six consecutive months before the petition was filed in May 2012, neither state meets the definition of a home state under the first provision of § 30-3B-201(a)(l).
Under the second provision of § 30-3B-201(a)(1) for determining jurisdiction on the basis of a home state, and as applied to this case, we look to see if three requirements are fulfilled: (1) whether there are any dates on which the state was the home state of the child as defined under § 30-3B-102(7); (2) if so, whether any such date is within six months before the child-custody proceeding commenced; and (3) if so, whether a parent continued to reside in the state during the child’s absence from the state. The second provision of § 30-3B-201(a)(l) has particular application to situations where a child has been removed from one state to another by a parent. See Ex parte Siderius, 144 So.3d at 326 (construing second provision of § 30-3B-201(a)(1) to “ ‘provide[ ] that “home state *240 jurisdiction” continues for six months after a child is removed from the state but a parent continues to reside in the home state’ ” (quoting DeWitt v. Lechuga, 393 S.W.3d 113, 119 (Mo.Ct.App.2013))).
As noted, the child in this case did not reside in Alabama for six consecutive months at any time before the father filed the petition for custody. Thus, Alabama was never the child’s home state under the first requirement, and, consequently, jurisdiction could not exist in Alabama under the second provision of § 30-3B-201(a)(l).
Regarding the status of Mississippi as a home state under the second provision of § 30 — 38—201(a)(1), the child lived in that state from June 2010 until October 30 or 31, 2011, when the child began living in Alabama. Because the child lived in Mississippi for six consecutive months, the first requirement was met — Mississippi was the child’s home state until October 2011. However, the six-month period before the father filed the petition only extended back to November 21, 2011. Therefore, the second requirement — that any date on which the first requirement was met occurred within six months before the commencement of the action — was not met because the child was removed from Mississippi on October 30 or 31, outside the six-month “look back” period. The same result is reached if we examine the date the child left the home state of Mississippi (October 30 or 31, 2011) and extend the time forward six months (until April 30, 2012), because the petition was not filed until May 21, 2012. Ex parte Siderius, 144 So.3d at 327 (“Section 30-3B-201(a)(l) must be construed to extend home-state jurisdiction under § 30-3B-102(7) for an additional six months.”). We need not address the third requirement of a parent’s continuing to live in the home state, although we note that the mother also' moved from Mississippi to Alabama from October 2011 until January 2012. Therefore, Mississippi did not have home-state jurisdiction under the second provision of § 30-3B-201(a)(l) either.
The mother raised an objection to subject-matter jurisdiction only on the basis that Mississippi was the home state for purposes of § 30-3B-201(a)(l). Neither party addresses whether the juvenile court had subject-matter jurisdiction under any other portion of § 30-3B-201(a). Nevertheless, we will look to the other provisions of that statute to determine if the juvenile court had subject-matter jurisdiction over the underlying proceeding. See K.M.G. v. B.A., 73 So.3d 708, 710 (Ala.Civ.App.2011) (“On questions of subject-matter jurisdiction, this court is not limited by the parties’ arguments or by the legal conclusions of the lower court.”).
We note that § 30-3B-201 (a)(2) provides that if another state does not have jurisdiction as a home state, an Alabama court has jurisdiction if:
“a. The child and the child’s parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
b. Substantial evidence is available in this state concerning the child’s care, protection, training, and personal relationships.” [4]
Section 30-3B-201(a)(2) requires a significant connection between the state and the child and at least one parent as well as the availability of substantial evidence in the state relevant to the child-custody determination.
*241 “Some factors that have been weighed in these cases are the child’s relationship with extended or blended family members, enrollment in school or day care, participation in social activities, access to medical, dental, or psychological care, or the availability of government assistance. Some courts will mention the parent’s employment or family ties.”
Claudia G. Catalano, Annotation, Construction and Application of Uniform Child Custody Jurisdiction and Enforcement Act’s Significant Connection Jurisdiction Provision, 52 A.L.R. 6th 438, § 2, p. 453 (2010). See also Baker v. Baker, 25 So.3d 470, 474 (Ala.Civ.App.2009) (discussing the requirement of a “significant connection” along with evidence of “care, protection, training, and personal relationships” under § 30-3B-201(a)(2)). The mother does not challenge the evidence presented at the hearing that would form the basis for the juvenile court’s having exercised jurisdiction under this subsection. We note that the father has lived in Alabama since the birth of the child; that the child lived in Alabama for almost two months during the six-month period before the father filed the petition for custody; and that, after the mother and the child moved from Alabama, the child was in Alabama every other weekend visiting the father before the commencement of the child-custody proceeding. Further, the record contains abundant testimony before the juvenile court “concerning the child’s care, protection, training, and personal relationships” in Alabama, including testimony regarding the education and social development of the child as well as the recommendation of the guardian ad litem favoring an award of custody to the father. Therefore, the record establishes that the juvenile court had jurisdiction under § 30-3B-201(a)(2).

Conclusion

Having determined that Mississippi was not the child’s home state for purposes of § 30-3B-201(a)(l) but that the juvenile court had jurisdiction pursuant to § 30-3B-201(a)(2), we affirm the judgment.
AFFIRMED.
PITTMAN, THOMAS, and MUORE, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.

. The father testified by affidavit, submitted in response to a motion to dismiss filed by the mother, that the mother and the child had moved to Alabama in October 2011. At trial, the father testified that they had moved to Alabama in December 2011. The mother testified at trial that she and the child had moved to Alabama in October 2011. Because the mother asserts in her brief to this court that she and the child lived in Alabama from October 2011 until January 2012, we will analyze the issue she presents using the dates she has provided.

. During the pendency of the underlying proceeding, the father also filed a separate petition to establish his paternity. On August 16, 2012, the juvenile court established the father's paternity on the basis of DNA tests obtained by the parties privately. The mother has never disputed paternity.

. The mother does not assert on appeal that the father’s residence in Chunchula was actually in Mississippi.

. Section 30-3B-201(a)(2) also provides for jurisdiction when a state with home-state jurisdiction declines to exercise jurisdiction. That provision does not apply in this case.