**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| PAUL J. PASTOR, JR., PIERCE COUNTY SHERIFF, | ) ) | No. 82262-4-I |
| | ) | |
| Respondent/Cross-Appellant, | ) ) | DIVISION ONE |
| | ) | |
| v. | ) ) | PUBLISHED OPINION |
| | ) | |
| REAL PROPERTY COMMONLY DESCRIBED AS 713 SW 353RD PLACE, FEDERAL WAY, KING COUNTY, WASHINGTON, and all appurtenances and improvements thereon, | ) ) ) ) ) ) | |
| | ) | |
| Defendant In Rem, | ) ) | |
| | ) | |
| Interested Party: MEI XIA HUANG, | ) ) | |
| | ) | |
| Appellant/Cross-Respondent. | ) ) | |
| | ) | |

HAZELRIGG, J. — The Pierce County Sheriff moved to seize the Defendant Real Property, commonly described as 713 SW 353rd Place, Federal Way, Washington, after his department served a search warrant there and discovered a sophisticated illegal marijuana grow operation. Mei Xia Huang intervened as an interested party in the civil forfeiture proceedings and claimed ownership of the Defendant Real Property. After Huang backed out of a settlement offer she had proposed, the trial court ultimately granted summary judgment for the Pierce County Sheriff and ordered forfeiture. Huang raises numerous constitutional challenges in her appeal and the Pierce County Sheriff cross-appeals the trial

No. 82262-4-I/2

court's denial of its motion to enforce Huang's settlement agreement under CR 2A. Finding no merit in Huang's various claims, we affirm the summary judgment and forfeiture order. Accordingly, we need not reach the cross-appeal.

FACTS

Officers from the Pierce County Sheriff Department (PCS) executed a search warrant on May 20, 2019 at the Defendant Real Property in Federal Way, commonly described as 713 SW 353rd Place, where law enforcement discovered that the home there had been converted to support and contain a sophisticated marijuana grow operation. Mei Xia Huang was on the property at the time the warrant was executed and had in her possession $20,400 in cash and her Washington State Identification Card with the address of the Defendant Real Property listed on it.

On June 3, 2019 PCS sent a "Notice of Seizure and Intended Forfeiture" of personal property to Huang by "regular and certified U.S. Mail" at the Defendant Real Property address. On June 8, 2019, Huang responded through her attorney and asserted "ownership of all" the items "seized from our client's residence." On July 25, 2019, PCS commenced an in rem action by filing its "Summons and Notice of Intended Seizure and Forfeiture" and "Complaint of Forfeiture in Rem" and moved "For Issuance of Warrant for Arrest in Rem." PCS filed a lis pendens on the Defendant Real Property on July 30, 2019, naming Huang as "Grantor" whose "right, title and interest is intended to be affected."

On August 9, 2019, the trial court issued a "Warrant of Arrest in Rem Authorizing Seizure of Real Property" and then five days later on August 14, the

- 2 -

Warrant, Summons, Complaint, Lis Pendens and other documents were posted "in a conspicuous place" on Defendant Real Property. Two days following the posting of the documents, Huang's attorney entered a notice of appearance on her behalf. A "Declaration of Due Diligence" was filed by PCS on August 22, 2019, which indicated Huang could not be located for purpose of personal service. On September 5, 2019, a PCS deputy went to the Defendant Real Property and, finding no person in possession at that time, taped a copy of the warrant for arrest in rem to the front door.

On September 17, 2019, PCS moved the trial court to authorize service by publication under RCW 4.28.100(6), which was granted the following day. Less than a week later, Huang filed an "Answer and Affirmative Defenses," which argued Huang, as defendant in rem and interested party, had not been served properly under the law. At the end of September, PCS moved to continue the trial date and other litigation deadlines. On October 8th, Huang filed written opposition to the continuance, but it was granted over her objection on October 17, 2019. A little over a week after the continuance was granted, PCS served Huang's counsel with its first set of interrogatories and requests for production, some of which went to Huang's affirmative defense that she had not been properly served under the relevant law. Though a CR 26(i) conference was required due to Huang's repeated delay in responding, she did eventually file her responses on January 10, 2020. However, Huang failed to provide any information regarding her assertions as to lack of service; noting only that she found some of the interrogatories and requests for production that went to such inquiry objectionable.

No. 82262-4-I/4

On January 23, 2020, PCS sought to serve Huang at the California address listed on her vehicle registration. Then in April 2020, PCS moved for summary judgment and order of forfeiture and, on May 1, 2020, moved to compel discovery under CR 37 based on her continued avoidance of her discovery obligations. Two days after Huang responded to PCS' summary judgment motion, and the day before the hearing on its CR 37 motion[1], Huang made a settlement offer to PCS. The parties then engaged in an exchange of counteroffers over email until Huang made a settlement offer that was acceptable to PCS. PCS clearly communicated its acceptance of Huang's offer to her counsel via email that same day. The court was advised that an agreed resolution had been reached and PCS moved to strike the hearing on its motion for summary judgment, as well as the trial date. But, less than a week later, Huang reneged on the offer and refused to sign the final settlement agreement prepared by PCS.

In July 2020, PCS moved for summary judgment to enforce the settlement agreement under CR 2A, contract principles, and equitable estoppel. Huang did not dispute the records of her settlement negotiations nor the applicability of equitable estoppel to the issue before the court, but claimed that no contract existed and further asserted that the agreement was unenforceable as an impermissible excessive fine under the Eighth Amendment to the United States Constitution. Huang's declaration regarding the matter admitted that she voluntarily authorized her attorney to make the counteroffer, but then

_____

[1] PCS' motion to compel was granted over Huang's opposition on May 11, 2020.

acknowledged that after her offer was accepted by PCS, she simply "decided I did not want to do it" and refused to sign.

In August 2020, citing the negotiation emails, the trial court "determine[d] that on June 3, 2020, Plaintiff and interested party Mei Xia Huang entered into a settlement agreement that is binding under contract law and CR 2A," and that the "terms of that agreement are stated in the email sent by [PCS' counsel] on June 3, 2020, at 4:08 p.m." and "[n]o reasonable fact finder could find that Plaintiff and Huang did not enter into that agreement." But the trial court also denied enforcement of the agreement based on Huang's argument that the agreement violated her rights under the Eighth Amendment and because PCS had not established Huang knowingly, voluntarily and intelligently waived those rights.

PCS sought discretionary review of that ruling in this court and while that motion was pending here, PCS renoted the hearing in the trial court on its summary judgment motion on the merits which it had previously stricken in light of the settlement agreement. The motion for summary judgment was granted in December 2020 and awarded PCS a final order of forfeiture because "Huang's brief denial of knowledge is thoroughly contradicted by the objective, circumstantial evidence that demonstrates her knowledge" that the property was being used for drug purposes and because she had "not carried her burden to demonstrate an Eighth Amendment violation."

Huang timely appealed.

ANALYSIS

I.      Overview of Jurisdiction

We begin our analysis with a cursory overview of types of jurisdiction in light of the framing of some of Huang's challenges on appeal and the parties' conflation of terminology in briefing.  "'Jurisdiction is the power and authority of the court to act.'"  ZDI Gaming Inc. v. State ex rel. Wash. State Gambling Comm'n, 173 Wn.2d 608, 617, 268 P.3d 929 (2012) (internal quotation marks omitted) (quoting Dougherty v. Dep't of Labor & Indus., 150 Wn.2d 310, 315, 76 P.3d 1183 (2003).

A.  Subject Matter Jurisdiction

Subject matter jurisdiction is the authority of a court to hear and decide the type of controversy at issue.  Banowsky v. Guy Backstrom, DC, 193 Wn.2d 724, 731, 445 P.3d 543 (2019).  If a tribunal lacks subject matter jurisdiction, the implication is that it does not have authority to decide the claim at all or order any type of relief.  Id.

> Because the absence of subject matter jurisdiction is a defense that can never be waived, judgments entered by courts acting without subject matter jurisdiction must be vacated even if neither party initially objected to the court's exercise of subject matter jurisdiction and even if the controversy was settled years prior.

In re Marriage of McDermott, 175 Wn. App. 467, 479, 307 P.3d 717 (2013).  When a court acts without subject matter jurisdiction the consequences of that action are "draconian and absolute."  Cole v. Harveyland, LLC, 163 Wn. App. 199, 205, 258 P.3d 70 (2011).  We review the question of whether a court had subject matter jurisdiction de novo.  McDermott, 175 Wn. App. at 479.  The trial court had subject matter jurisdiction to hear the civil forfeiture proceedings.

B. Original Jurisdiction

Original jurisdiction is related to subject matter jurisdiction. Original jurisdiction means an action may be filed in a particular court. Ledgerwood v. Lansdowne, 120 Wn. App. 414, 420, 85 P.3d 950 (2004). Our state constitution vests the superior court with original jurisdiction "in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court." WASH. CONST. art IV, § 6. "The constitution thus gives the superior courts universal original jurisdiction, from which the legislature is empowered to 'carve out' the limited jurisdiction of inferior courts." Ledgerwood, 120 Wn. App. at 419 (quoting Young v. Clark, 149 Wn.2d 130, 134, 65 P.3d 1192 (2003)). RCW 2.08.010 grants original jurisdiction to the superior courts in all cases in which the value of the property in controversy is in excess of three hundred dollars. This statute is intended to codify article IV, section 6 of the Washington Constitution. City of Walla Walla v. $401, 333.44, 164 Wn. App. 236, 248, 262 P.3d 1239 (2011). Original jurisdiction to hear this civil forfeiture matter was properly with the superior court.

C. Personal Jurisdiction

Most relevant to this case is personal jurisdiction, also known as specific jurisdiction or general jurisdiction. See State v. LG Elec's, Inc., 185 Wn. App. 394, 411, 341 P.3d 346 (2015). A challenge on this basis is waived if not timely asserted. Modumetal, Inc. v. Xtalic Corp., 4 Wn. App. 2d 810, 836, 425 P.3d 871 (2018). "Specific jurisdiction, which since 'has become the centerpiece of modern jurisdictional theory,' requires that suit arise out of or relate to the defendant's

- 7 -

contacts with the forum." LG Elec's, Inc., 185 Wn. App. at 411 (internal quotation marks omitted) (quoting Daimler AG v. Bauman, 571 U.S. 117, 127–28, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014)).

> General jurisdiction, which since "[has played] a reduced role," permits the exercise of personal jurisdiction over a nonresident defendant where the defendant's "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities."

Id. (alterations in original) (internal quotation marks omitted) (quoting Daimler, 571 U.S. at 128). We review claims with regard to personal jurisdiction de novo. Failla v. FixtureOne Corp., 181 Wn.2d 642, 649, 336 P.3d 1112 (2014). Huang's assignment of error as to personal jurisdiction will be analyzed in detail below.

D. In rem Jurisdiction

"In rem jurisdiction is far more analogous to personal jurisdiction than to subject matter jurisdiction." City of Walla Walla, 164 Wn. App. at 249 (internal quotation marks omitted). "[S]eizure of the res is a prerequisite to the initiation of [in rem] forfeiture proceedings [because] that property must be seized to fix and preserve in rem jurisdiction." Id. at 250. This is particularly true with movable personal goods since it would be impossible to determine the competent forum until seizure of such property is achieved. Id. Here, in rem jurisdiction was obtained when PCS posted the seizure notice on the Defendant Real Property on June 3, 2019.

- 8 -

No. 82262-4-I/9

II.     Challenges to Jurisdiction and Due Process

A.  Notice Provisions of RCW 69.50.505

Huang argues that because PCS failed to personally serve her within fifteen days of the seizure of the property, the trial court lacked jurisdiction to render judgment on the matter.  This is incorrect.  The relevant notice provision is set out in RCW 69.50.505(3), which states in relevant part:

> The law enforcement agency under whose authority the seizure was made shall cause notice to be served within fifteen days following the seizure on the owner of the property seized and the person in charge thereof and any person having any known right or interest therein, including any community property interest, of the seizure and intended forfeiture of the seized property. Service of notice of seizure of real property shall be made according to the rules of civil procedure. However, the state may not obtain a default judgment with respect to real property against a party who is <u>served by substituted service</u> absent an affidavit stating that a good faith effort has been made to ascertain if the defaulted party is incarcerated within the state, and that there is no present basis to believe that the party is incarcerated within the state. Notice of seizure in the case of property subject to a security interest that has been perfected by filing a financing statement in accordance with chapter 62A.9A RCW, or a certificate of title, shall be made by service upon the secured party or the secured party's assignee at the address shown on the financing statement or the certificate of title. The notice of seizure in other cases may be served by any method authorized by law or court rule including but not limited to service by certified mail with return receipt requested. Service by mail shall be deemed complete upon mailing within the fifteen day period following the seizure.

(Emphasis added).  This statute explicitly contemplates either personal service or substitute service of the interested party.

Further, RCW 69.50.505(3) is not focused on jurisdiction as Huang posits, which would essentially function as a statute of limitations.  Instead, RCW 69.50.505(3) serves to establish a framework for two purposes: timely notice and resolution of the question of forfeiture.  First, the 15-day notice is aimed at providing

- 9 -

notice to the person at risk of losing the property at issue, expressly including by means of substitute service. Second, RCW 69.50.505, when read as a whole, also seeks to ensure timely disposition of forfeiture matters so that the seizing agency is not able to encumber the property in question longer than necessary for judicial review.

Here, Huang seeks to use RCW 69.50.505(3) to argue the trial court could not adjudicate the matter at hand because she was not personally served within 15 days of the seizure of her property such that the court did not have jurisdiction to hear the civil forfeiture action. We reject this claim as a mischaracterization of the statute. After the seizure on August 9, PCS repeatedly attempted personal service. A "Declaration of Due Diligence" was filed by PCS on August 22, 2019, which indicated Huang could not be located for purpose of personal service. On September 18, 2019, PCS received approval from the court[2] to proceed with substitute service by publication as authorized by the rules of civil procedure. CR 4(d)(3); RCW 69.50.505(3) ("Service of notice of seizure of real property shall be made according to the rules of civil procedure"). Substitute service encompasses service by publication pursuant to RCW 4.28.100. CR(4)(d)(3). The statute contemplates service by weekly publication in a newspaper for six consecutive weeks. RCW 4.28.110. It could never be completed within 15 days. Clearly, the legislature was not treating service to be completed within 15 days as jurisdictional,

---

[2] In her Notice of Appeal, Huang includes the September 18, 2019 Order Granting Motion for Service by Publication. She asserts error as to this order based on PCS' failure to comply with King County Local Court Rule 7(b)(7). While the record does demonstrate that PCS failed to comply with this rule by not appraising the judicial officer who signed the September 18 order of the fact that the same motion had been denied by another judge on September 12, this error is harmless in light of the other methods of service completed by PCS and, as discussed in Section C below, Huang's affirmative conduct which constitutes waiver.

No. 82262-4-I/11

when the party to be served could not be found within the state and publication was required. PCS complied with the notice provision of RCW 69.50.505(3).

### B. Due Process

Huang argues on numerous grounds that she was denied due process and ultimately weaves that assertion into her claim that the trial court did not have jurisdiction to render judgment. All of her arguments as to due process are rooted in her assertion that she was not provided proper notice under the statutory procedures for forfeiture. However, as explained above, service here was proper under the statute. "[D]ue process generally affords an individual notice and an opportunity to be heard when the government deprives the individual of a life, liberty, or property interest." Tellevik v. Real Prop. Known as 31641 W. Rutherford St. Located in City of Carnation, Wash, 125 Wn.2d 364, 370–71, 884 P.2d 1319 (1994).

We adopt our reasoning in two recent unpublished cases involving almost identical arguments to those Huang now presents.[3] The two cases which provide us sound reasoning on the matter before us are City of Seattle v. $43,697.18 in United States Currency, No. 79902-9-I (Wash Ct. App. March 9, 2020) (unpublished) https://www.courts.wa.gov/opinions/pdf/799029.pdf; and City of Seattle v. $19, 560.48 in United States Currency, No. 79002-1-I (Wash Ct. App. March 9, 2020) (unpublished) https://www.courts.wa.gov/opinions/pdf/790021.pdf. In each of these forfeiture cases, we rejected similar argument regarding

---

[3] While we generally do not cite unpublished cases, under GR 14.1(c), we may do so when "necessary for a reasoned decision."

challenges to service. We reinforced that under RCW 69.50.505(3) notice of seizure of personal property "<u>may be served by any method authorized by law or court rule</u> including but not limited to service by certified mail with return receipt requested." <u>$19, 560.48</u>, slip op. at 11; <u>$43, 697.18</u>, slip op. at 16 (emphasis added). Most fundamentally, we reinforced that due process generally includes notice and opportunity to be heard, and minor errors in procedure do not necessarily rise to the level of a violation of due process. <u>$19, 560.48</u>, slip op. at 11; <u>$43, 697.18</u>, slip op. at 5–6.

PCS sent a "Notice of Seizure and Intended Forfeiture" of personal property to Huang on June 3, 2019 by "regular and certified U.S. Mail" at the Defendant Real Property address, which she used as her home address in various contexts including her Washington State Identification Card and her son's childcare enrollment records. Her attorney asserted a claim of ownership on behalf of Huang five days later. On August 14, 2019, the Warrant, Summons, Complaint, Lis Pendens and other documents were posted "in a conspicuous place" on Defendant Real Property. Two days later, Huang's counsel entered a notice of appearance.

The procedural history of this case demonstrates that service was effectuated as anticipated under RCW 69. 50.505(3), "by any method authorized by law or court rule," consistent with our holding in <u>$19, 560.48</u>, slip op. at 11–12. Accordingly, we reject Huang's claims of due process violations.[4]

---

[4] Huang attempts to frame her challenge to two separate continuances granted by the trial court as additional violations of due process. While she objected to PCS' September 30, 2019 motion for continuance, thus preserving the issue for appeal, the record does not demonstrate that she objected to the second continuance that the trial court granted on November 23, 2020.

First, we review rulings on requests for continuance for abuse of discretion. <u>City of Bellevue v. Vigil</u>, 66 Wn. App. 891, 892, 833 P.2d 445 (1992). Huang fails to engage in the proper, and more deferential, standard of appellate review on these assignments of error. Next, despite her failure to

C. Waiver

As an additional matter, any arguments with regard to personal jurisdiction and in rem jurisdiction over the Defendant Real Property have been waived as Huang clearly appeared through counsel, availed herself of the litigation and substantively engaged throughout the entire case. While Huang did assert failure of service of process as an affirmative defense in her September 24, 2019 Interested Party's Answer and Affirmative Defenses, she neglected to provide any discovery to opposing counsel as to this issue, such that PCS sought a discovery conference under CR 26(i). When she finally did respond to PCS' interrogatories and requests for production, she alternately objected and failed to provide complete responses. After several more months of avoidance and evasiveness by Huang, PCS filed a motion to compel on May 1, 2020, which was granted on May 11. If, after having appeared via counsel, a party raises an affirmative defense, it is more than reasonable to expect that they will comply with the applicable discovery rules so that the litigation may proceed.

Huang attempts to hide behind the shield of a claim of failure of service of process, but the record demonstrates that the trial court found that she was the true owner of the Defendant Real Property and that she listed that address as her home. The record strongly suggests that she evaded service, much as she evaded answering any questions as to her affirmative defense on that issue. To now raise

---

object in the trial court and preserve the issue for appeal, she invites us to reach the ruling on the November continuance as a manifest constitutional error under RAP 2.5(a). However, she again fails to engage with the proper test under the RAP for demonstrating that this was, in fact, a manifest error affecting a constitutional right. Finally, it is not lost on this panel that the November continuance was necessitated by Huang's last minute decision to back out of the settlement offer that she voluntarily proposed to PCS. Because she fails to engage with the proper appellate standard of review for these assignments of error, we decline to reach them.

such argument and claim it as reversible error, despite the fact that she both appeared through counsel and proceeded throughout the case in its entirety to the point that she even proposed and nearly entered a CR 2A settlement, is somewhat incredible as it is precisely her continued litigation that undercuts her ability to claim prejudice in any form. By Huang's own actions, we can conclude that all of her service of process arguments are waived as a matter of law. See Lybbert v. Grant County, 141 Wn.2d 29, 38–39, 1 P.3d 1124 (2000) (waiver can occur "if the defendant's assertion of the defense is inconsistent with the defendant's previous behavior.").[5]

III.    Equal Protection

Huang next argues that the civil forfeiture statute, RCW 69.50.505, violates the equal protection clause in so far as it allows forfeiture of property for marijuana related violations despite her assertion that "the substance is not so dangerous that it can't be safely manufactured, sold, possess and consumed by adults in Washington." As PCS correctly points out in its response brief, Huang's argument is based on a flawed premise:

> The law [RCW 69.50.505,] however does not deem marijuana as too "dangerous" to be "safely manufactured, sold, possessed, and consumed"—it instead requires such manufacture, sale, possession and consumption to be regulated. The classification at issue is the regulation of production, possession and sale of marijuana in certain

---

[5] Again, as to Huang's appeal of the September 18, 2019 Order Granting Motion for Service by Publication and assertion of error based on PCS' failure to comply with King County Local Court Rule 7(b)(7), this error does not impact our determination that Huang waived the affirmative defense of failure of service, either personal or substitute, by way of appearance through counsel and her extensive engagement with the litigation, including her tactical avoidance of compliance with discovery. Even if we accepted her contention that the order granting PCS' Motion for Service by Publication should be reversed based on this error, it would have no practical impact on our ultimate conclusions on her various challenges.

instances and its discouragement in others. See e.g. RCW 69.50.325 (requiring licensing to avoid illegality).

(Emphasis in original).

Huang properly acknowledges that the correct constitutional standard for the case at hand is rational basis. "Under the rational basis test the challenged law must be rationally related to a legitimate state interest. The legislation will be upheld unless the classification rests on grounds wholly irrelevant to the achievement of a legitimate state objective." Seeley v. State, 132 Wn.2d 776, 795, 940 P.2d 604 (1997). We presume legislative acts to be constitutional and do not find otherwise unless established as such beyond a reasonable doubt. Id. "The rational basis test requires only that the means employed by the statute be rationally related to legitimate state goals, and not that the means be the best way of achieving that goal." Id. In reviewing whether a rational relationship exists, we may assume any set of facts necessary which may be reasonably assumed. Id. "In order to defeat the legislation, the [challenger] must show, beyond a reasonable doubt, that no state of facts exists or can be conceived sufficient to justify the challenged classification, or that the facts have so far changed as to render the classification arbitrary and obsolete." State v. Smith, 93 Wn.2d 329, 337, 610 P.2d 869 (1980).

Here, Huang fails to even engage with this standard such that she can meet her burden. As PCS points out, there are numerous reasons the State may have for the continued designation of marijuana as illegal under RCW 69.50. In particular, valid State concerns exist as to the process of cultivation and manufacture of marijuana, including regulation of the chemicals utilized which

- 15 -

No. 82262-4-I/16

could harm an individual. This is of critical concern here in light of the fact that preliminary evidence gathered by PCS upon execution of the search warrant demonstrated that two chemicals it alleges are banned in marijuana cultivation in our state were used in the grow operation on the Defendant Real Property. As Huang fails to meet her burden, we need not assume any set of facts beyond those presented to the trial court to conclude that the State may have legitimate goals in enacting the statute at issue.

IV.     Excessive Fines

Huang next broadly asserts that the forfeiture of her property violates the Eighth Amendment to the United States Constitution. However, as with her other constitutional claims on appeal, and as the trial court expressly determined in the summary judgment proceedings, Huang does not carry her burden in mounting this constitutional challenge.

In order to consider a challenge based on the Eighth Amendment's excessive fines clause, a reviewing court must first determine whether the sanction at issue is a "fine," only then moving to examination of excessiveness. City of Seattle v. Long, 198 Wn.2d 136, 163, 493 P.3d 94 (2021). "If a sanction is partially punitive, it falls within the excessive fines clause." Id. While Huang fails to engage with this threshold inquiry, we recently relied upon Long and cases from the United State Supreme Court to conclude that civil asset forfeitures are punitive for purposes of excessive fines analysis. See Jacobo Hernandez v. City of Kent, 19 Wn. App. 2d 709, 718, 497 P.3d 871 (2021).

- 16 -

No. 82262-4-I/17

Huang only presents a cursory argument in her opening brief that appears to suggest that the seizure of the Defendant Real Property was excessive based on the comparative value of Huang's equity in the property in relation to the value of the illegal marijuana grow and the maximum fine that can be imposed pursuant to a conviction for a class C felony under Chapter 69.50 RCW. Our Supreme Court's opinion in Long, clarifying the test for excessive fines in Washington, was issued in August 2021 roughly two months before Huang filed her reply brief in this case, but she neither cites, much less applies, the test it pronounced. While she does provide some discussion of the facts in Timbs v. Indiana, __ U.S. __, 139 S. Ct. 682, 203 L. Ed. 2d 11 (2019), she neither sets out the test the court utilized in that case, nor applies it to the facts of her own. In the absence of any engagement by Huang with the proper legal standard, our inquiry as to this issue ends here. See Prostov v. Dept. of Licensing, 186 Wn. App. 795, 823, 349 P.3d 874 (2015) ("The failure of an appellant to provide argument and citation of authority in support of an assignment of error precludes appellate consideration of an alleged error.").

V.      Challenge to Decision Explaining Order Granting Summary Judgment and Order of Forfeiture

Finally, Huang expressly includes in her Notice of Appeal a separate decision that accompanied the trial court's Order Granting Summary Judgment and Order of Forfeiture and, in her opening brief, assigns error to a number of the trial court's reasons set out in that decision. Though Huang claims these are findings of fact, under the posture of summary judgment such is not the case. We construe these explanations as legal conclusions underlying the trial court's

ultimate ruling.  Here again, Huang fails to engage in the proper standard of review for her challenges on appeal, rather indicating that these assignments of error are captured in her general assertion that "the forfeiture of Huang's property in it's [sic] entirety is an excessive fine that violates the Eighth Amendment."  As with her attacks on the continuances which she sought to cloak in a higher constitutional standard, Huang's failure to properly frame her arguments on appeal or apply the relevant standard of review is fatal to her claim as to these assignments of error.

VI.    Cross-Appeal & Attorney Fees

Because we find no error in the various trial court rulings challenged in Huang's direct appeal[6] and affirm them, we need not reach PCS' cross-appeal of the court's denial of its motion to enforce the settlement agreement.  Further, Huang requests fees on appeal under RCW 69.50.505(6), but given that she has not prevailed in her appeal, we decline to award fees.

Affirmed.

WE CONCUR:

---

[6] In her Notice of Appeal, Huang specifically lists the August 8, 2019 Warrant of Arrest in rem Authorizing Seizure of Real Property as one of the challenged orders. However, because she does not assign error in her opening brief to the issuance of this warrant by the trial court, we decline to review it.

- 18 -